## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

| | | |
|---|---|---|
| IMHOFF INVESTMENT, L.L.C., a Michigan limited liability company, individually and as the representative of a class of similarly situated persons, | ) ) ) ) ) | |
| Plaintiff, | ) ) | No. 10-cv-10996 |
| | ) | Honorable Marianne O. Battani |
| v. | ) ) | |
| SAMMICHAELS, INC., | ) ) | |
| Defendant. | ) ) | |

### PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Plaintiff, Imhoff Investment, L.L.C. ("Plaintiff"), moves pursuant to Fed. R. Civ. P. 56 for entry of summary judgment in favor of the Class and against Defendants.

1. Defendants violated the Telephone Consumer Protection Act, 47 U.S.C. § 227 (the "TCPA"), by sending 7,022 advertisements by fax without the targets' prior express invitation or permission and without the opt-out notice required by the TCPA and the FCC's regulations.

2. The TCPA provides statutory liquidated damages in the amount of $500 per violation. 47 U.S.C. § 227 (b) (3) (B) (creating private right of action "to recover for actual monetary loss for such violation, or to receive $500 in damages for each such violation, whichever is greater").

3. The Court may treble the statutory damages if it finds that

1

Defendant's violations of the TCPA were committed "willfully or knowingly." 47 U.S.C. § 227 (b) (3) ("the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph").

4.     The certified class was notified about this case.  Four persons indicated that they wish to be excluded from this case. After subtracting the faxes those four persons received, Plaintiff's Motion for Summary Judgment seeks relief for Defendants' other 7,018 violations of the TCPA.

5.     Plaintiff seeks an award of statutory damages in the total amount of $3,509,000 (7,018 times $500 per violation) against Defendant and in favor of the class.

6.     If the Court concludes that Defendant's TCPA violations were committed "willfully and knowingly," as federal law defines those terms, then Plaintiff requests that the Court treble the statutory damages to $1,500 per fax, or a total of $10,527,000.

7.     Plaintiff seeks prejudgment interest on any money judgment entered by the Court pursuant to Mich. Comp. Laws § 600.6013.

8.     Plaintiff has submitted a memorandum in support of this motion.

9.     Pursuant to Local Rule 7.1 (d), Plaintiff's counsel certifies that he contacted Defendant's counsel and learned that Defendant will oppose this Motion.

WHEREFORE, Plaintiff respectfully requests: (1) that the Court enter summary judgment in favor of the Class and against Defendant in the amount of

$3,509,000 for 7,018 violations of the TCPA; (2) that the Court treble the amount of statutory damages to $10,527,000; (3) that the Court award prejudgment interest; (4) that the Court award such other and further relief as the Court deems appropriate under the circumstances.

Dated: August 16, 2013

Respectfully submitted,

IMHOFF INVESTMENT, L.L.C., a Michigan limited liability company, individually and as the representative of a class of similarly situated persons

/s/ Phillip A. Bock

Jason R. Thompson
SOMMERS SCHWARTZ, P.C.
2000 Town Center, Suite 900
Southfield, MI 48075
Telephone: 248/355-0300

Brian J. Wanca
ANDERSON + WANCA
3701 Algonquin Road, Suite 760
Rolling Meadows, IL 60008
Telephone: 847/368-1500

Phillip A. Bock
BOCK & HATCH, LLC
134 N. La Salle St., Suite 1000
Chicago, IL 60602
Telephone: 312/658-5500

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

| | | |
|---|---|---|
| IMHOFF INVESTMENT, L.L.C., a Michigan limited liability company, individually and as the representative of a class of similarly situated persons, | ) ) ) ) | |
| | ) | No. 10-cv-10996 |
| Plaintiff, | ) ) | |
| | ) | Honorable Marianne O. Battani |
| v. | ) ) | |
| SAMMICHAELS, INC. | ) ) | |
| Defendant. | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF
## <u>PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT</u>

**JASON J. THOMPSON (P47184)**
Sommers Schwartz, P.C.
Attorney for Plaintiff
2000 Town Center, Suite 900
Southfield, MI 48075
248-355-0300
jthompson@sommerspc.com

**BRIAN J. WANCA**
Anderson + Wanca
Attorney for Plaintiff
3701 Algonquin Road, Suite 760
Rolling Meadows, IL 60008
847-368-1500
bwanca@andersonwanca.com

**PHILLIP A. BOCK**
Bock & Hatch, LLC
134 N. La Salle, Suite 1000
Attorney for Plaintiff
Chicago, IL 60602
312-658-5500
phil@bockhatchllc.com

## <u>STATEMENT OF THE ISSUES</u>

1. Whether the Court should grant summary judgment in favor of the certified class and against Defendant in the amount of $3,509,000, calculated at $500.00 for each of Defendant's 7,018 violations of the TCPA. 47 U.S.C. § 227 (b) (3) (B) (creating private right of action "to recover for actual monetary loss for such violation, or to receive $500 in damages for each such violation, whichever is greater").

2. Whether the Court should find that the Defendant's TCPA violations were committed "willfully or knowingly" and treble the awarded statutory damages and enter summary judgment in favor of the certified class and against Defendant in the total amount of $10,527,000, calculated at $1,500 for each of Defendant's 7,018 violations of the TCPA. 47 U.S.C. § 227 (b) (3) ("the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph").

3. Whether the Court should award prejudgment interest on the damage award from the date of the violations pursuant to Mich. Comp. Laws § 600.6013.

## AUTHORITY FOR THE RELIEF SOUGHT

47 U.S.C. § 227 (b) (3) (B)

Fed. R. Civ. P. 56

Mich. Comp. Laws § 600.6013

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986)

*American Copper & Brass, Inc. v. Lake City Industrial Products, Inc., et al.,* No. 09-cv-01162 (W.D. Mich., July 12, 2013) (Quist, J.)

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986)

*City of Sterling Heights, Mich. v. United Nat. Ins. Co.*, 319 Fed.Appx. 357 (6th Cir., 2009).

*Exclusively Cats Veterinary Hospital v. Anesthetic Vaporizer Services, Inc.*, No. 10-10620 (E.D. Mich., Aug. 10, 2011) (Tarnow, J.)

*G.M. Sign, Inc. v. Group C Communications, Inc.*, Case No. 1:08-cv-04521 (N.D. Ill. Jan. 10, 2011) (Darrah, J.) (Exhibit F)

*Sengenberger v. Credit Control Services, Inc.*, 2010 WL 1791270, *6 (N.D. Ill. May 5, 2010) (Zagel, J.)

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

STATEMENT OF THE ISSUES ................................................................................ 2

AUTHORITY FOR THE RELIEF SOUGHT ............................................................ 3

MEMORANDUM ..................................................................................................... 1

I.      INTRODUCTION ......................................................................................... 1

II.     UNDISPUTED FACTS .................................................................................. 4

        A.      The Parties. ........................................................................................ 4

        B.      Defendant hired B2B to send their unsolicited advertisement by
                fax. ...................................................................................................... 4

        C.      Defendant's advertisement was sent to the Class by fax and
                without prior express invitation or permission 7,022 times. ............. 6

        D.      Class Certification, class notice, and requests for exclusion. ............ 7

III.    GOVERNING LEGAL STANDARDS .......................................................... 7

IV.     ARGUMENT ................................................................................................. 9

        A.      Defendant sent an "advertisement." ................................................. 10

        B.      Defendant's faxes were "unsolicited." ............................................. 11

        C.      Defendant successfully sent its advertisement 7,022 times. ............ 12

        D.      The Court should award $500 in statutory damages for each
                violation. .......................................................................................... 13

        E.      The Court should treble the amount of statutory damages. .............. 13

        F.      The Court should award prejudgment interest. ................................. 14

V.      CONCLUSION ............................................................................................ 16

CERTIFICATE OF SERVICE ............................................................................... 17

i

## <u>TABLE OF AUTHORITIES</u>

Page

**Cases**

*A Fast Sign Co., Inc. v. Am. Home Servs., Inc.*, 734 S.E.2d 31 (GA. 2012)...........................................................................................................9

*American Copper & Brass, Inc. v. Lake City Industrial Products, Inc., et al.,*No. 09-cv-01162 (W.D. Mich., July 12, 2013) (Quist, J.)..................8

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)..................................7

*Calvi v. Knox County*, 470 F.3d 422 (1st Cir. 2006)....................................8

*Celotex Corp. v. Catrett,* 477 U.S. 317 (1986) ............................................7

*City of Sterling Heights, Mich. v. United Nat. Ins. Co.*, 319 Fed.Appx. 357, 364-365 (6th Cir., 2009)....................................................................15

*Exclusively Cats Veterinary Hospital v. Anesthetic Vaporizer Services, Inc.*, No. 10-10620 (E.D. Mich., Aug. 10, 2011) (Tarnow, J.) ...................8

*G.M. Sign, Inc. v. Group C Communications, Inc.*, Case No. 1:08-cv-04521 (N.D. Ill. Jan. 10, 2011) (Darrah, J.)................................................8

*Hinman v. M and M Rental Ctr., Inc.*, 596 F. Supp. 2d 1152 (N.D. Ill. 2009)................................................................................................3, 8, 10

*Holtzman C.P.A. & Associates v. Turza*, No. 08 C 2014, 2011 WL 3876943 (N.D. Ill. Aug. 29, 2011)...........................................................3, 8

*Hooters of Augusta, Inc. v. Am. Global Ins. Co.*, No. 04-11077, 2005 WL 3292089 (11th Cir. 2005)............................................................................8

*National Union Fire Ins. Co. of Pittsburgh v. ESI Ergonomics Solutions, LLC*, 342 F. Supp. 2d 853 (D. Ariz. 2004) ...............................9

*Sengenberger v. Credit Control Services, Inc.*, 2010 WL 1791270, *6 (N.D. Ill. May 5, 2010) (Zagel, J.)............................................................14

**Statutes**

47 U.S.C. § 312(f) (1)..................................................................................13

Mich. Comp. Laws § 600.6013.....................................................................14

Telephone Consumer Protection Act, 47 U.S.C. § 227 ........................ passim

**Rules**

Federal Rule 23............................................................................................ 2, 7

<u>MEMORANDUM</u>

Plaintiff, Imhoff Investment, LLC ("Plaintiff"), individually and as the representative of the certified class of similarly-situated persons (the "Class"), submits the following memorandum in support of its motion for summary judgment in favor of the Class. Pursuant to Local Rule 7.1 (d), Plaintiff's undersigned counsel contacted Defendant's counsel and learned that they will oppose this motion.

## I.    INTRODUCTION

Plaintiff received an advertisement from defendant, Sammichaels, Inc. ("Defendant"), by fax. Plaintiff did not expressly invite the fax advertisement or give Defendant express permission to send it. Defendant sent that same advertisement by fax to 7,022 persons in Michigan without first obtaining anyone's prior express invitation or permission and without the opt-out notice required by federal law. Defendant sent the advertisement by fax on purpose rather than by accident.

Defendant hired a fax broadcaster named Business To Business Solutions ("B2B") to advertise and promote Defendant's men's clothing store and tuxedo rental business. At Defendant's direction, B2B created a fax advertisement which Defendant then approved and authorized, and B2B sent that advertisement by fax on Defendant's behalf to potential customers of Defendant. B2B culled the target list of companies from a third-party database B2B purchased years earlier from InfoUSA. B2B's fax transmission logs show that on November 21, 2006, and November 22, 2006, Defendant's advertisement was successfully sent by fax to 7,022 different telephone numbers. Nobody had contacted the targets to obtain their prior express invitation or permission to be sent Defendant's advertisement by fax

1

and the advertisement lacked a compliant opt-out notice.

On October 1, 2012, the Court granted Plaintiff's motion for class certification pursuant to Federal Rule 23, certifying a class defined as follows:

> All persons who were successfully sent a fax on November 21, 2006, or November 22, 2006, by or on behalf of Sam Michaels Menswear - Tuxedo of Farmington Hills, Michigan, offering "Buy 1 Suit--Get 2 Free" and the "cheapest Tuxedo Rental Around. . .$55." [(the "Class") (Doc. 67).]

The Court ordered Plaintiff to send notice to the Class by U.S. Mail using the contact information identified by Plaintiff's expert. (Doc. 77). On or about May 19, 2013, Plaintiff caused the approved *Notice of Pending Class Action* to be mailed to the class members. (Doc. 78). The notice advised the class members of the opportunity to stay in the class or to exclude themselves from any judgment or disposition of this case and informed the class that opt-out requests needed to be postmarked on or before July 8, 2013. (Doc. 78-1). In response to the notice, four persons requested exclusion. Their opt-out requests are attached hereto as <u>Exhibit A</u>. Each of those four persons had been successfully sent one of Defendant's fax advertisements. Those four are excluded from the relief requested in this motion.

The Class seeks recovery under the Telephone Consumer Protection Act, 47 U.S.C. § 227 (the "TCPA"). The TCPA forbids the use of "any telephone facsimile machine, computer, or other device to send an unsolicited advertisement to a telephone facsimile machine." 47 U.S.C. § 227 (b) (1) (C). To prevail under the TCPA, a plaintiff must show that (1) defendant used a telephone facsimile machine, computer or other device to send one or more faxes to plaintiff's facsimile machine; (2) the fax contained material advertising the commercial availability or quality of

any property, goods, or services, and (3) plaintiff did not give defendant prior express invitation or permission to send the faxes. *E.g., Hinman v. M and M Rental Ctr., Inc.*, 596 F. Supp. 2d 1152, 1163 (N.D. Ill. 2009) ("The plaintiff class is entitled to statutory damages in the amount of $3,862,500, based on the total of 7,725 unsolicited advertisements that defendants sent…."); *Holtzman C.P.A. & Associates v. Turza*, No. 08 C 2014, 2011 WL 3876943, *4 (N.D. Ill. Aug. 29, 2011) ("the court grants plaintiff's motion for summary judgment, awarding plaintiff $500 in statutory damages for each of the 8,430 times defendant successfully sent the Daily Plan–It fax to one of the class member's fax machines, for a total of total of $4,215,000"), appeal pending.

Here, the Class seeks judgment in the amount of $500 for each time Defendant successfully sent an "unsolicited facsimile advertisement" to one of the class members' "facsimile machines" in violation of the TCPA. The undisputed evidence shows that Defendant hired B2B to fax the advertisement on Defendant's behalf without the recipients' prior express invitation or permission to do so. Defendant's advertisement was successfully transmitted by B2B by fax a total of 7,022 times to 7,022 different telephone numbers, causing damage to the recipients. After subtracting the four (4) faxes received by the persons who opted out of the Class, this motion seeks summary judgment for 7,018 successful fax transmissions. Consequently, the Court should enter judgment in favor of the Class in the amount of $3,509,000 (7,018 x $500).

Additionally, the Class requests that the Court treble the statutory damages.

The Court may treble the damages award if it finds that the Defendant's violations were committed "willfully or knowingly." 47 U.S.C. § 227 (b) (3) ("the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph"). Here, Defendant sent its fax to Plaintiff and the members of the Class purposefully, not accidentally. Consequently, the Court should find that Defendant's faxes were sent "willfully or knowingly" and treble the statutory damages to $1,500 per fax, or a total of $10,527,000 for Defendant's 7,018 violations of the TCPA.

Moreover, the Class requests that the Court award prejudgment interest from March 12, 2010, the date the Complaint was filed.

## II.    UNDISPUTED FACTS

### A.    The Parties.

Plaintiff is an investment firm in Bloomfield, Michigan. Plaintiff's Response to Defendant's First Set of Interrogatories (4/29/2011), ¶¶ 1, 15 (Exhibit B).

Defendant is a men's clothing store and tuxedo rental shop in Farmington Hills, Michigan. Deposition of Maher Shihadeh (10/27/2011) ("Shihadeh Dep."), 6:14-22 (Exhibit C). Maher ("Mike") Shihadeh is its sole owner. *Id.*, 6:25, 7:1-5.

### B.    Defendant hired B2B to send their unsolicited advertisement by fax.

Caroline Abraham operated Business to Business Solutions ("B2B") from her Brooklyn, NY apartment. She was involved in fax advertising from August 2005 until September 2007. First Declaration of Caroline Abraham (12/28/10) ("First Abraham Dec.") First Abraham Dec., ¶ 2 (Exhibit D). B2B worked with a Romanian company known as Macaw and acted as its agent in the United States. *Id.*, ¶ 3. B2B

"quarterbacked" the junk faxing operation from Brooklyn, NY. *Id.*, ¶¶ 3, 6-13. With

the client's assistance, B2B designed and drafted form advertisements to send by

fax. *Id.*, ¶ 6. The customer would tell B2B how many faxes to send and directed B2B

either to send the faxes to a particular geographic location or to send them to

particular types of businesses. *Id.* B2B would gather a list of targets from a

database it had purchased from InfoUSA. *Id.* After receiving the customer's

approval, B2B would cause the document to be blast faxed. *Id.* B2B never contacted

any of the companies on B2B's InfoUSA list to obtain their permission or invitation

to receive advertisements by fax. *Id.*, ¶ 7.

B2B sent Defendant a solicitation offering fax advertising services. Shihadeh

Dep., 10:1-3, 11:21-25, 12:1-4, 40:7-8, 18-20. Shihadeh, on behalf of Defendant,

talked with B2B about its services and expressed interest in B2B's fax advertising

program. *Id.*, 12:12-21, 13:10-19. Shihadeh worked with B2B to create a fax

advertisement and filled out a document from B2B with the header "TELL US

WHAT TO WRITE IN YOUR FREE ADS" with information and details about

Defendant's business and services. *Id.*, 17:2-7 and generally pp. 18-20, Ex. 1; *See*

*also* Second Declaration of Caroline Abraham (6/21/2011) ("Second Abraham Dec."),

¶ 6, B2B000006 (<u>Exhibit E</u>). B2B took the information provided by Shihadeh and

created an advertisement for Defendant's business. Shihadeh Dep., Ex. 3; Second

Abraham Dec., ¶ 6, B2B000007. Shihadeh worked with B2B to finalize and revise

Defendant's fax advertisement until it was ready to be sent. Shihadeh Dep., 25:16-

25, 26:1-25, 27:1-25, 28:1-8 Ex. 3, 5. Shihadeh ultimately approved the final form

and content of Defendant's advertisement. Shihadeh Dep., 28:6-8; Second Abraham
Dec., ¶ 7, B2B000022. On November 21, 2006, Defendant paid B2B $468.00 to send
out over 10,000 fax advertisements on its behalf. Shihadeh Dep., 35:23-25, Ex. 9;
Second Abraham Dec., ¶ 7, B2B000005, B2B000021. Shihadeh requested that B2B
send Defendant's ads to the zip codes surrounding Defendant's business.  Shihadeh
Dep, 19:10-15; 31:1-7.

### C. Defendant's advertisement was sent to the Class by fax and without prior express invitation or permission 7,022 times.

Based on Defendant's instructions to send the subject fax advertisement, B2B
sent Defendant's form advertisement by fax to a list of persons culled from a
database it purchased from InfoUSA. First Abraham Dec., ¶¶ 6, 7; Second Abraham
Dec. ¶ 7. B2B successfully sent Defendant's advertisement to 7,022 fax numbers.
Expert Report of Robert Biggerstaff (01/20/2010)[1] ("Biggerstaff Report") at Exs. 3-4
(Exhibit F). It is undisputed that neither B2B nor Defendant obtained express
invitation or permission to send Defendant's advertisement by fax to any of those
persons. First Abraham Dec. ¶¶ 6-7; Shihadeh Dep., 31:17-20.

The B2B records show a successful transmission to Plaintiff's fax number—
(248) 540-9428—on November 22, 2006. Biggerstaff Report at Ex. 3, p. 107, line
5,001; Ex. 4, p. 12, line 2,682; *See also* Amended Declaration of Robert Biggerstaff
(02/21/2012), ¶ 10 (Exhibit G). Neither Defendant nor B2B contacted Plaintiff to get
Plaintiff's express invitation or permission to send an advertisement by fax. First

---

[1]    To avoid burdening the Court with voluminous of pages of fax transmission
reports, Plaintiff redacted a portion of the exhibits to the Biggerstaff Report. All of
the pages were provided to Defendant and Plaintiff can provide it to the Court if
necessary.

Abraham Dec., ¶ 6, Shihadeh Dep., 31:17-20.

### D.   Class Certification, class notice, and requests for exclusion.

On October 1, 2012 the Court granted Plaintiff's motion for class certification pursuant to Federal Rule 23 and appointed Plaintiff as the representative of the Class. (Doc. 67). After the Sixth Circuit denied Defendant's petition for leave to appeal, the Court ordered Plaintiff to send notice to the Class by U.S. Mail. (Doc. 77). Plaintiff did so. (Doc. 78).

As stated in the notice, each class member had until July 8, 2013 to request exclusion. (Doc. 78-1). Plaintiff's counsel received only four exclusion requests. *See* Opt Out Requests (<u>Exhibit A</u>). After subtracting those persons, this motion seeks relief for 7,018 class members.

## III.   GOVERNING LEGAL STANDARDS

Summary judgment is appropriate where the record and affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). A genuine issue is one that could be resolved in favor of either party, and a material fact is one that has the potential of affecting the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986). The existence of merely a scintilla of evidence in support of the non-moving party's position is insufficient; there must be evidence on which the jury could reasonably find for the non-moving party. *Id.*, at 252. The First Circuit articulated that the non-moving party "requires more than the frenzied brandishing of a cardboard sword" if the non-moving party is to defeat summary judgment. *Calvi v. Knox County*, 470 F.3d

422, 426 (1st Cir. 2006).

Other courts, including courts in this District, have granted summary judgment in class actions involving violations of the TCPA and those decisions are persuasive authority in support of this motion. *See, e.g.*, *American Copper & Brass, Inc. v. Lake City Industrial Products, Inc., et al.,* No. 09-cv-01162 (W.D. Mich., July 12, 2013) (Quist, J.) (entering summary judgment in favor of the class in the amount of $5,254,500) (Exhibit H); *Exclusively Cats Veterinary Hospital v. Anesthetic Vaporizer Services, Inc.*, No. 10-10620 (E.D. Mich., Aug. 10, 2011) (Tarnow, J.) (entering summary judgment in favor of the class in the amount of $4,159,500.00) (Exhibit I); *Holtzman, C.P.A. & Associates v. Turza*, No. 08 C 2014, 2011 WL 3876943 (N.D. Ill., Aug. 29, 2011) (Gettleman, J.) (entering summary judgment in favor of the class in the amount of $4,215,000), appeal pending; *G.M. Sign, Inc. v. Group C Comm., Inc.*, Case No. 1:08-cv-04521 (N.D. Ill. Jan. 10, 2011) (Darrah, J.) (entering summary judgment for $18,921,000, calculated as $500 per fax for 37,842 faxes sent in violation of the TCPA) (Exhibit J); *Hinman v. M and M Rental Center, Inc.*, 596 F. Supp. 2d 1152, 1163 (N.D. Ill. 2009) (Bucklo, J.) ("The plaintiff class is entitled to statutory damages in the amount of $3,862,500, based on the total of 7,725 unsolicited advertisements that defendants sent in Faxes # 4 and # 5."); *Hooters of Augusta, Inc. v. Am. Global Ins. Co.*, No. 04-11077, 157 Fed.Appx. 201, 2005 WL 3292089 (11th Cir. 2005) (affirming summary judgment in favor of plaintiff and the class against insurer for indemnity for TCPA liability of $11,889,000.00); *A Fast Sign Co., Inc. v. Am. Home Servs., Inc.*, 734 S.E.2d 31 (GA.

8

2012) (holding that a TCPA claim is predicated upon the sending of an unsolicited fax, without regard to whether the fax is successfully sent or received, and reversing appellate court decision and remanding for further consideration of trial court's $459 million damage award); *National Union Fire Ins. Co. of Pittsburgh v. ESI Ergonomics Solutions, LLC*, 342 F. Supp. 2d 853 (D. Ariz. 2004) (noting state court's entry of summary judgment in the amount of $40,446,580.00, calculated at $500.00 per fax plus statutory interest).

## IV.    ARGUMENT

The Class's claims arise under the TCPA. At all relevant times, the TCPA stated in relevant part as follows:

§ 227.  Restrictions on use of telephone equipment

(a) Definitions
As used in this section—
                              …
        (2) The term "telephone facsimile machine" means equipment which has the capacity (A) to transcribe text or images, or both, from paper into an electronic signal and to transmit that signal over a regular telephone line, or (B) to transcribe text or images (or both) from an electronic signal received over a regular telephone line onto paper.
                              …
        (4) The term "unsolicited advertisement" means any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission.

(b) Restrictions on use of automated telephone equipment
        (1) Prohibitions
It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States—
                              …
                (C) to use any telephone facsimile machine, computer, or other device to send an unsolicited advertisement to a telephone

9

facsimile machine

…

    (3) Private right of action
    A person or entity may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State—

…

       (B) an action to recover for actual monetary loss for such violation, or to receive $500 in damages for each such violation, whichever is greater. [47 U.S.C. § 227 (2005).]

Here, there is no genuine issue of material fact with respect to any element of the Class's TCPA claims. To prevail under the TCPA, "plaintiffs must show that (1) defendant used a telephone facsimile machine, computer or other device to send one or more faxes to plaintiff's facsimile machine, (2) the faxes sent contained material advertising the commercial availability or quality of any property, goods, or services, and (3) plaintiffs did not give prior express invitation or permission for defendant to send the faxes." *Hinman*, 596 F. Supp. 2d at 1158.

### A.   Defendant sent an "advertisement."

The TCPA defines an "advertisement" as "any material advertising the commercial availability or quality of any property, goods, or services." 47 U.S.C. § 227 (a) (4). Here, there is no genuine issue of material fact that Defendant sent an "advertisement," as that word is defined by section 227 (a) (4) of the TCPA. It is beyond dispute that the sole purpose of Defendant's purchase of B2B's mass faxing services was to promote and/or advertise the availability or quality of Defendant's business and services. A review of the fax plainly and unequivocally shows that it is material advertising the commercial availability of goods or property:





Biggerstaff Report at Ex. 2.

**B.** **Defendant's faxes were "unsolicited."**

The TCPA defines "unsolicited" as material "transmitted to any person without that person's prior express invitation or permission." 47 U.S.C. § 227 (a) (4). Neither Defendant nor B2B obtained express consent from anyone on the B2B target list before sending Defendant's advertisement by fax. First Abraham Dec., ¶ 6; Shihadeh Dep., 31:17-25; 32:1-4. Defendant did not provide any business names

or fax numbers to B2B for the sending of its ads. Shihadeh Dep., 31:11-16. Defendant did not contact anyone for permission to send advertising faxes. *Id.*, 31:17-20.  There is no genuine issue of material fact about whether Defendant's fax advertisement was sent "without … prior express permission or invitation."

### C.   Defendant successfully sent its advertisement 7,022 times.

The TCPA makes it "unlawful" to use any "computer, or other device to send an unsolicited advertisement to a telephone facsimile machine." 47 U.S.C. § 227 (b) (1) (C). A "facsimile machine" is defined as "equipment which has the capacity … to transcribe text or images (or both) from an electronic signal received over a regular telephone line onto paper." 47 U.S.C. § 227 (a) (2) (emphasis added). Here, the evidence is uncontroverted that B2B used a computer-based fax broadcasting application called "HylaFAX" to send the subject fax advertisements on behalf of Defendant. *See* Biggerstaff Report at ¶ 10; Second Report of Robert Biggerstaff (01/3/2012) (Exhibit K). The undisputed evidence shows that, on Defendant's behalf, B2B successfully sent Defendant's advertisement to 7,022 targets by fax. Biggerstaff Report at Exs. 3-4. For example, the B2B records show a successful transmission to Plaintiff's fax number—(248) 540-9428—on November 22, 2006. Biggerstaff Report at Ex. 3, p. 107, line 5,001; Ex. 4, p. 12, line 2,682.

B2B sent the fax advertising Defendant's business only after the direct and personal authorization from Defendant's owner. Defendant's owner was not a "mere participant" in the actions that led to Defendant's more than 7,000 violations of the TCPA. On behalf of Defendant, he communicated with B2B about the fax campaign, informed B2B about what information should be on the advertisement, authorized

the advertisement's content, authorized payment for the fax campaign, and authorized B2B to send the advertisement by fax to more than 10,000 persons. Shihadeh Dep., 17:2-7, 26:1-25; 27:1-25; 28:1-8, 32:15-25; 33:1-8; 36:1-8, 25; 37:1-3; Second Abraham Dec., ¶ 5-7.

### D. The Court should award $500 in statutory damages for each violation.

The TCPA creates a private cause of "action to … receive $500 in damages for each such violation." 47 U.S.C. § 227 (b) (3) (B). Each time Defendant's advertisement was sent to a fax number, Defendant violated the TCPA. Counting only the successful fax transmissions, Defendant committed 7,022 violations. *See* Biggerstaff Report, Exs. 3-4. Subtracting the four faxes sent to the persons who requested exclusion from the class, 7,018 violations remain at issue. Plaintiff requests that the Court award statutory damages in the amount of $3,509,000, which was calculated by multiplying 7,018 violations times $500 per violation.

### E. The Court should treble the amount of statutory damages.

The Court may treble the damages award if it finds that the Defendant's violations were committed "willfully or knowingly." 47 U.S.C. § 227 (b) (3) ("the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph"). The Communications Act of 1943—of which the TCPA is a part—defines the term "willful" as "the conscious or deliberate commission or omission of such act, irrespective of any intent to violate any provision[ ], rule or regulation." 47 U.S.C. § 312(f) (1). *See Sengenberger v. Credit Control Services, Inc.*, 2010 WL

13

1791270, *6 (N.D. Ill. May 5, 2010) (Zagel, J.) (citing *Dubsky v. Advanced Cellular Communications, Inc.,* 2004 WL 503757, at *2 (Ohio Com.Pl. Feb.24, 2004)). "There is no dispute as to whether Defendants intentionally made the contested phone calls to Plaintiff. Defendants have put forth no facts to contest the assertion that any of the nine disputed phone calls were made willfully or knowingly. Accordingly, I find that Defendants knowingly and willfully made the phone calls." *Sengenberger*, 2010 WL 1791270, at *6. *See also American Home Services, Inc. v. A Fast Sign Co., Inc.,* --- S.E.2d ----, 2013 WL 3467337 *4 (Ga. App. Ct. 2013). We conclude that a plaintiff "need not prove that defendant had knowledge of the TCPA's provisions in order to establish that the defendant willfully or knowingly violated the TCPA." *Stewart,* 2011 U.S. Dist. LEXIS 50046 at 19. AHS admitted that it hired Sunbelt to send advertising faxes on its behalf. This is sufficient to make the violation "willful" within the meaning of the statute. See *Sengenberger,* 2010 U.S. Dist. LEXIS 43874 at 17.

Here, as in *Sengenberger* and *American Home*, there is no dispute that Defendant intended to send its advertisement by fax. The faxes were sent purposefully, not accidentally. Consequently, the Court should find that Defendant's faxes were sent "willfully or knowingly" and treble the statutory damages to $1,500 per fax, which totals $10,527,000 for Defendant's 7,018 violations of the TCPA.

### F.  The Court should award prejudgment interest.

Pursuant to Mich. Comp. Laws § 600.6013(1), prejudgment "[i]nterest is allowed on a money judgment recovered in a civil action." In Michigan, prejudgment

14

interest is calculated from the date the complaint is filed up to the date of judgment. See Mich. Comp. Laws § 600.6013(8). The interest is "calculated at 6-month intervals from the date of filing the complaint at a rate of interest which is equal to 1% plus the average interest rate paid at auctions of 5-year United States treasury notes during the 6 months immediately preceding July 1 and January 1, as certified by the state treasurer, and compounded annually. . ." Mich. Comp. Laws § 600.6013(6).

The interest amount is calculated based "on the entire amount of the money judgment." Mich. Comp. Laws § 600.6013(8). A "money judgment" is any judgment that "orders the payment of a sum of money, as distinguished from an order directing an act to be done or property to be restored or transferred." *City of Sterling Heights, Mich. v. United Nat. Ins. Co.*, 319 Fed.Appx. 357, 364-365 (6th Cir., 2009) (citing *People ex rel. Wayne County Prosecutor v. $176,598 U.S. Currency*, 633 N.W.2d 367, 369 (2001)). Courts must award prejudgment interest "in all cases to which the statute applies." *City of Sterling Heights.*, 319 Fed.Appx. at 364-365 (citing *Everett v. Nickola*, 234 Mich.App. 632, 599 N.W.2d 732, 735 (1999)). Prejudgment interest is beneficial because it offsets the costs of litigation, encourages settlement, and compensates plaintiffs for the "delays in recovering money damages." *City of Sterling Heights*, 319 Fed.Appx. at 364-365.

Here, Plaintiff and the Class are seeking a money judgment based on the statutory damages available under the TCPA. Therefore, the Court should award the Class prejudgment interest from March 12, 2010, based on the $500 liquidated

15

statutory damages under the TCPA.

## V.    CONCLUSION

Plaintiff respectfully requests: (1) that the Court enter summary judgment in favor of the Class and against Defendant in the amount of $3,509,000 for 7,018 violations of the TCPA; (2) that the Court treble the amount of statutory damages to $10,527,000; (3) that the Court award prejudgment interest; (4) that the Court award such other and further relief as the Court deems appropriate under the circumstances.

Dated: August 16, 2013

Respectfully submitted,

IMHOFF INVESTMENT, L.L.C., a Michigan limited liability company, individually and as the representative of a class of similarly situated persons

/s/ Phillip A. Bock

Jason R. Thompson
SOMMERS SCHWARTZ, P.C.
2000 Town Center, Suite 900
Southfield, MI 48075
Telephone: 248/355-0300

Brian J. Wanca
ANDERSON + WANCA
3701 Algonquin Road, Suite 760
Rolling Meadows, IL 60008
Telephone: 847/368-1500

Phillip A. Bock
BOCK & HATCH, LLC
134 N. La Salle St., Suite 1000
Chicago, IL 60602
Telephone: 312/658-5500

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that the foregoing Motion for Summary Judgment and Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment were served upon all counsel of record on August 16, 2013, using the Court's CM/ECF system.

/s/Phillip A. Bock