UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

———————————————————
)
IMHOFF INVESTMENT, L.L.C.,            )
individually and as the              )
representative of a class of         )
similarly situated persons,          )
)
        Plaintiff,           )      Court No:  10-cv-10996
)
v                                    )      Honorable Marianne O. Battani
)
SAMMICHAELS, INC.,                   )
)
        Defendant.           )
———————————————————  )

Brian J. Wanca
ANDERSON + WANCA
Attorney for Plaintiff
3701 Algonquin Road, Suite 760
Rolling Meadows, Illinois  60008
Phone:  (847) 368-1500
Facsimile: (847) 368-1501
E-Mail: buslit@andersonwanca.com


Phillip A. Bock
BOCK & HATCH, LLC
Attorney for Plaintiff
134 North LaSalle Street, Suite 1000
Chicago, Illinois  60602
Phone: (312) 658-5500
Facsimile: (312) 658-5555

Jason J. Thompson (P47194)
SOMMERS SCHWARTZ, P.C.
Attorney for Plaintiff
2000 Town Center, Suite 900
Southfield, Michigan  48075
Phone:  (248) 355-0300
Facsimile: (248) 436-8453
E-Mail: jthompson@sommerspc.com


Robert G. Kamenec (P35283)
Thomas P. Vincent (P32794)
PLUNKETT COONEY
Attorneys for Defendant
38505 Woodward Avenue, Suite 2000
Bloomfield Hills, Michigan  48304
Phone:  (248) 901-4000
Facsimile: (248) 901-4040
E-Mail: rkamenec@plunkettcooney.com
E-Mail: tvincent@plunkettcooney.com

Molly A. Arranz
SMITHAMUNDSEN LLC
Attorneys for Defendant
150 North Michigan Ave. #3300
Chicago, Illinois 60601
Phone:  (312) 894-3307
Facsimile:  (312) 997-1707
marranz@salawus.com

## DEFENDANT'S RESPONSE IN OPPOSITION TO
## PLAINTIFF'S MOTION AND MEMORANDUM IN SUPPORT OF SUMMARY JUDGMENT

NOW COMES Defendant, SamMichaels, Inc., ("SamMichaels") by and through its attorneys, Plunkett Cooney and SmithAmundsen LLC, and submits this Response Memorandum in Opposition to Plaintiff's Motion and Memorandum in Support of its Motion for Summary Judgment (Doc. #81).  In support, Defendant submits the attached brief.

SMITHAMUNDSEN LLC

By:   /s/ Molly A. Arranz
     Molly A. Arranz
     Attorneys for Defendant
     150 North Michigan Ave. #3300
     Chicago, Illinois  60601
     Direct Dial:  (312) 894-3307
     marranz@salawus.com

PLUNKETT COONEY
By:   Robert G. Kamenec (P35283)
     Thomas P. Vincent (P32794)
     Attorneys for Defendant
     38505 Woodward Avenue, Suite 2000
     Bloomfield Hills, Michigan  48304
     Direct Dial:  (248) 901-4068
     rkamenec@plunkettcooney.com
Dated:  September 24, 2013     tvincent@plunkettcooney.com

1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

IMHOFF INVESTMENT, L.L.C.,
individually and as the
representative of a class of
similarly situated persons,

              Plaintiff,

v

SAMMICHAELS, INC.,

              Defendant.
_____

Court No:  10-cv-10996

Honorable Marianne O. Battani

Brian J. Wanca
ANDERSON + WANCA
Attorney for Plaintiff
3701 Algonquin Road, Suite 760
Rolling Meadows, Illinois  60008
Phone:  (847) 368-1500
Facsimile: (847) 368-1501
E-Mail: buslit@andersonwanca.com


Phillip A. Bock
BOCK & HATCH, LLC
Attorney for Plaintiff
134 North LaSalle Street, Suite 1000
Chicago, Illinois  60602
Phone: (312) 658-5500
Facsimile: (312) 658-5555

Jason J. Thompson (P47194)
SOMMERS SCHWARTZ, P.C.
Attorney for Plaintiff
2000 Town Center, Suite 900
Southfield, Michigan  48075
Phone:  (248) 355-0300
Facsimile: (248) 436-8453
E-Mail: jthompson@sommerspc.com


Robert G. Kamenec (P35283)
Thomas P. Vincent (P32794)
PLUNKETT COONEY
Attorneys for Defendant
38505 Woodward Avenue, Suite 2000
Bloomfield Hills, Michigan  48304
Phone:  (248) 901-4000
Facsimile: (248) 901-4040
E-Mail: rkamenec@plunkettcooney.com
E-Mail: tvincent@plunkettcooney.com

Molly A. Arranz
SMITHAMUNDSEN LLC
Attorneys for Defendant
150 North Michigan Ave. #3300
Chicago, Illinois 60601
Phone:  (312) 894-3307
Facsimile:  (312) 997-1707
marranz@salawus.com

**DEFENDANT'S BRIEF IN SUPPORT OF ITS RESPONSE IN OPPOSITION TO
PLAINTIFF'S MOTION AND MEMORANDUM IN SUPPORT OF SUMMARY JUDGMENT**

## TABLE OF CONTENTS

Page

TABLE OF CONTENTS................................................................................i

CONCISE STATEMENT OF THE ISSUES PRESENTED ....................................ii

INDEX OF AUTHORITIES/CONTROLLING AUTHORITY ..................................iii

I.   INTRODUCTION. ..........................................................................1

II.  STATEMENT OF FACTS.................................................................1

   A.  The Parties............................................................................1

   B.  There Is Evidence That Defendant Did Not Hire Or Authorize The Alleged
       Fax Advertising By An Independent Contractor. .....................................1

   C.  There Is No Admissible Evidence Of Successful Sending of Fax
       Advertisements to Class Members. ..................................................3

ARGUMENT ..........................................................................................4

I.   PLAINTIFF HAS NOT SHOWN DEFENDANT WAS THE "SENDER" OF A
     FAX ADVERTISEMENT..................................................................5

   A.  Plaintiff Has Not Shown That SamMichaels Can Be Liable Under The
       TCPA For Actions of An Independent Contractor. ..................................6

   B.  Plaintiff Has Not Shown That The Material Issue Of Authorization Is
       Undisputed. ..........................................................................8

       1.  There Is A Deficiency In Evidence Of Final Approval Of Any Three Page
           Fax Advertisement. ............................................................9

II.  PLAINTIFF HAS NOT SHOWN STANDING FOR "THE CLASS;" THERE
     REMAINS A DISPUTE AS TO WHO CAN RECOVER UNDER THE TCPA. ...........12

III. Plaintiff Has Not Shown Successful Sending Of Advertisements. ...........................15

   A.  Plaintiff Has Not Provided Admissible Evidence To Show Successful
       Sending Of 7,018 Fax Advertisements. ..............................................16

   B.  The Clashing Opinions Of The Two Experts Are To Be Weighed By The
       Jury; Summary Judgment Is Improper.................................................20

IV.  PLAINTIFF HAS NOT PROVEN THE PLAINTIFF CLASS IS OR WOULD BE
     ENTITLED TO TREBLE DAMAGES OR PREJUDGMENT INTEREST. ..................21

CERTIFICATE OF SERVICE ......................................................................1

i

## <u>CONCISE STATEMENT OF THE ISSUES PRESENTED</u>

Whether Plaintiff has eliminated through admissible evidence genuine issues of material fact on the following points (on which Plaintiff has the burden of proof and persuasion under the Telephone Consumer Protection Act):

(1) Defendant was the "sender" of a fax advertisement;

(2) The successful sending of advertisements;

(3) The identity of the persons who are owners of the alleged fax line or fax machine; and

(4) The entitlement to trebled damages or prejudgment interest?

<u>INDEX OF AUTHORITIES</u>
and
<u>CONTROLLING OR MOST APPROPRIATE AUTHORITY</u>
(Designated by *)

<u>Page</u>

<u>CASES</u>

*All Am. Painting, LLC v. Fin. Solutions & Associates, Inc.*,
  315 S.W.3d 719 (Mo. 2010)..............................................................................13

*\*Am. Civil Liberties Union of Ohio, Inc. v. Taft*,
  385 F.3d 641 (6th Cir. 2004)............................................................................12

*Amchem Products Inc. v. Windsor*,
  521 U.S. 591 (1997) ........................................................................................15

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242; 106 S. Ct. 2505 (1986).......................................................5, 20

*Bridgeview Health Care Ctr. Ltd. v. Clark*,
  2013 WL 1154206 (N.D. Ill. Mar. 19, 2013)....................................................8

*Brooklyn Sav. Bank v. O'Neil*,
  324 U.S. 697 (1945) ........................................................................................23

*Cooper v. Eagle River Memorial Hosp., Inc.*,
  270 F.3d 456 (7th Cir. 2001)...........................................................................18

*Covington & Burling v. Intl. Mktg. & Research*,
  No. Civ. 01–0004360, 2003 WL 21384825 (D.C. Super. Ct. Apr. 17, 2003) ..................22

*Daubenmire v. City of Columbus*,
  Case No. 2:04-CV-01105, 2008 WL 4758677 (S.D. Ohio Oct. 24, 2008).......................13

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
  509 U.S. 579 (1993) ........................................................................................19

*Davis Next Friend LaShonda D. v. Monroe Cnty. Bd. of Educ.*,
  526 U.S. 629; 119 S. Ct. 1661 (1999)...............................................................7

*Dish Network LLC*,
  28 F.C.C.R. 6574 (F.C.C. May 9, 2013)............................................................7

*\*Fed. Screw Works v. Interface Sys., Inc.*,
  569 F. Supp. 1562 (E.D. Mich. 1983)..............................................................12

*G.M. Sign, Inc. v. Franklin Bank, S.S.B.*,
  Case No. 06 CV 949, 2008 WL 3889950 (N.D. Ill. Aug. 20, 2008)..................13

*Gen. Motors v. Devex Corp.,*
    461 U.S. 648 (1983) ..................................................................................23

*\*Harris v. World Fin. Network Nat. Bank,*
    867 F. Supp. 2d 888 (E.D. Mich. 2012).....................................................22

*\*Hartford Fire Ins. Co. v. Walter Kidde & Co. Inc.,*
    120 Mich. App. 283; 328 N.W.2d 29 (1982) ...............................................6

*\*Ira Holtzman, C.P.A. v. Turza,*
    11-3188, 2013 WL 4506176 (7th Cir. Aug. 26, 2013).................................15

*Janice v. Hondzinski,*
    176 Mich. App. 49; 439 N.W.2d 276 (1989) ...............................................6

*Kardules v. City of Columbus,*
    95 F.3d 1335 (6th Cir. 1996)......................................................................12

*Kendall v. Hoover Co.,*
    751 F.2d 171 (6th Cir. 1984).......................................................................5

*\*Kopff v. Roth,*
    CIV.A.05 798 JDB, 2007 WL 1748918 (D.D.C. Jun. 15, 2007) ......................24

*Loeffel Steel Products, Inc. v. Delta Brands, Inc.,*
    387 F. Supp. 2d 794 (N.D. Ill. 2005) ..........................................................17

*\*Lujan v. Defenders of Wildlife,*
    504 U.S. 555 (1992) ..................................................................................13

*\*Machesney v. Lar-Bev of Howell, Inc.,*
    Case No. 10-10085, 2013 WL 1721150 (E.D. Mich. Apr. 22, 2013)..............13

*Manno v. Healthcare Revenue Recovery Grp., LLC,*
    289 F.R.D. 674 (S.D. Fla. 2013) ................................................................22

*Manufacturers Auto Leasing, Inc. v. Autoflex Leasing, Inc.,*
    139 S.W.3d 342 (Tex. Ct. App. 2004) ........................................................22

*McDevitt v. Guenther,*
    522 F. Supp. 2d 1272 (D. Haw. 2007) .......................................................17

*\*Mey v. Pinnacle,*
    2012 WL 4009718 (N.D. W. Va. 2012) .....................................................6, 7

*\*Missouri ex rel Nixon v. American Blast Fax, Inc.,*
    196 F. Supp. 2d 920 (D. Mo. 2002)...........................................................23

*New Jersey Life Ins. Co. v. Getz,*
    622 F.2d 198 (6th Cir. 1980).....................................................................11

iv

*Nichol v. Billot*,
  406 Mich. 284; 279 N.W.2d 761 (1979) ............................................................6

*Savanna Grp., Inc. v. Trynex, Inc.*,
  10 C 7995, 2013 WL 4734004 (N.D. Ill. Sept. 3, 2013) ..................................22

*Sightsound.com Inc. v. N2K, Inc.*,
   391 F. Supp. 2d 321 (W.D. Pa. 2003)..............................................................20

*Spesco, Inc. v. Gen. Elec. Co.*,
  719 F.2d 233 (7th Cir. 1983)............................................................................20

*\*Texas v. Am. Blastfax, Inc.*,
  164 F. Supp. 2d 892 (W.D. Tex. 2001) ............................................................21

*The Hartford Ins. Group v. Mile High Drilling Co.*,
  96 Mich. App. 455; 292 N.W.2d 232 (1980) .....................................................6

*\*Thomas v. Taco Bell Corp.*,
  879 F. Supp. 2d 1079 (C.D. Cal. 2012)..........................................................6, 7

*TK-7 Corp. v. Estate of Barbouti*,
  993 F.2d 722 (10th Cir. 1993) .........................................................................17

*Trepel v. Roadway Exp., Inc.*,
  194 F.3d 708 (6th Cir.1999) .............................................................................17

*\*Uesco Indus., Inc. v. Poolman of Wisconsin, Inc.*,
  2013 IL App (1st) 112566 (2013) ..............................................................2, 8, 11

*United States v. Gonzales*,
  307 F.3d 906 (9th Cir. 2002) ............................................................................17

*United States v. Tipton*,
  269 F. Appx 551 (6th Cir. 2008).......................................................................17

*\*Veolia Transp., Inc. v. Enjoi Transp., LLC*,
  Case No. 09-14162, 2010 WL 3245402 (E.D. Mich. Aug. 17, 2010)............5, 12

*W. Va. v. United States*,
  107 S. Ct. 702 (1987) .....................................................................................6, 23

*Walker v. 9912 E. Grand River Assoc., LP*,
  Case No. 11-12085, 2012 WL 1110005 (E.D. Mich. Apr. 3, 2012)...................13

*Warren v. McLouth Steel Corp.*,
  111 Mich. App. 496; 314 N.W.2d 666 (1981) ....................................................6

*Wickham Contracting Co., Inc. v. Local Union No. 3, Int'l Bhd. of Elec. Workers, AFL-CIO*,
  955 F.2d 831 (2d Cir. 1992)..............................................................................23

*Wipf v. Kowalski,*
    519 F.3d 380 (7th Cir. 2008) ........................................................................... 20

*\*Young v. Langley,*
    840 F.2d 19 (6th Cir. 1988) ........................................................................... 23

*Zersen v. PT Ins. Grp.,*
    2012 WL 5936286 (N.D. Ill. Nov. 27, 2012) ....................................................... 8

## RULES
F.R.E. 23 ............................................................................................................ 15

F.R.E. 702 .......................................................................................................... 17

F.R.E. 703 .......................................................................................................... 17

F.R.E. 901 .......................................................................................................... 18

*Fed. R. Civ. Pro. 56(a) ...................................................................................... 4

*Fed. R. Civ. Pro. 56(c)(4) ................................................................................ 17

## STATUTES
28 U.S.C. § 2027(b) ........................................................................................... 15

## OTHER AUTHORITIES
Restatement (2nd) Agency §180a (1958) ........................................................... 11

## I.     INTRODUCTION.

Plaintiff's motion for summary judgment should be denied for three reasons.  First, SamMichaels did not retain any control over the independent contractors, B2B and Macaw, regarding the fax content and distribution; and, it never authorized the faxing that took place.  (*See e.g.,* Maher Shihadeh Affidavit attached hereto as **Exhibit A**.)  Second, Plaintiff has offered no proof that any of the alleged class members have standing to assert a claim under the TCPA.  Finally, Plaintiff fails to show a lack of dispute over the alleged, successful sending of fax advertisements to the Class.   Its expert's conclusions are based upon inadmissible evidence; and, there are competing expert opinions on the success or failure of the alleged fax advertisements.  For these reasons, Plaintiff's Motion should be denied.

## II.    STATEMENT OF FACTS.

### A.     The Parties.

Defendant generally accepts Plaintiff's "Undisputed Facts" under subsection "A."

### B.     There Is Evidence That Defendant Did Not Hire Or Authorize The Alleged Fax Advertising By An Independent Contractor.

To provide its "Undisputed Facts" under subsection "B," Plaintiff relies upon, in large part, two declarations by Caroline Abraham, one from December 28, 2010 ( "First Abraham Dec.") and one from June 21, 2011 ("Second Abraham Dec.").  (*See* Doc. #81 at 4-6.)  For reasons stated *infra*, Defendant disputes the admissibility of these declarations to support Robert Biggerstaff's opinions and what Defendant did or did not approve.  However, for purposes of what facts are generally in dispute, Defendant provides as follows.

Caroline Abraham's d/b/a "Business to Business Solutions" ("B2B") provided "secretarial services" for a Romanian company, known as Macaw SRL ("Macaw"). (Caroline Abraham Dep. in *Palm Beach v. Sarris*, at 70:4-15, attached hereto as **Exhibit B**.) B2B's two main functions were to utilize phone lines for Macaw's faxing and to collect paper checks for Macaw. (*Id.* at 13:8-14.)

As part of the secretarial services, Caroline Abraham maintained a "Client Table" and some other communications sent by fax. One notation on the Client Table for customers is something called the "N date." The "N Date" was a notation for "the date a customer approved an ad." (Exhibit B at 70:23-71:2; Doc.#81-5 at 9.) However, here, there is **_no_** "N Date" shown. Moreover, an "essential step[]" for a client to give final approval for fax advertising to be done on its behalf was to get a finalized fax ad back from the client in which the client had designated that the "fax was 'ad okay.'" (Exhibit B at 70:24-71:5; 220:3-11.) Here, there is **_no_** document from B2B showing "ad okay." Mr. Shihadeh never provided any handwritten approval of "ad ok" on any ad. (*See* Exhibit A, ¶7.)

The alleged fax advertisement at issue in this matter is a three-page advertisement—two pages of which purport to advertise the services of B2B, not Defendant. (*See e.g.,* Doc.#81-7, ¶14.) Caroline Abraham has confirmed in another case that two of these pages (which are the same at issue, here) promote *Macaw.* (Caroline Abraham Dep. at 191:3-15, in *Uesco v. Poolman*, attached hereto as **Exhibit C**.) They would use these first two pages to advertise "for fax customers…these were leads we were trying to get…"

(*Id.* at 191:10-19.)  To Abraham's knowledge, the client in the other case knew "[n]othing about it"—the advertising Macaw was attempting to do without approval or knowledge. (*See id.* at 192:4-15.)  Here, Mr. Shihadeh never reviewed or authorized any advertisements that were more than a single page.  (Exhibit A, ¶6.)  Moreover, he requested that the independent contractor target zip codes around 48334 but he provided further limitations on any advertising—numbers that also had a 248 area code.  (*See id.*, ¶5.)

### C.   There Is No Admissible Evidence Of Successful Sending of Fax Advertisements to Class Members.

Plaintiff provides the Second Abraham Dec. for proof of the contents of a hard drive, the Western Digital brand drive marked S/N # WCAHL6653150 and WD P/N: WD800BB-00DKA0 (hereinafter, "the Hard-Drive"), which, it is claimed, contains faxing activity from the faxing computers at issue.

However, Caroline Abraham "never used any faxing software or programs to send any fax advertisements."  (Exhibit B at 45:11-14.)  She did not have administrative rights to access the faxing programs or software; "the people controlling the faxing…the **computer people in Romania**" had those rights.  (*Id.* at 32:21-33; 45:15-22)(emphasis added.)  While Abraham was working for B2B, she "basically" only utilized or worked on a personal computer that she had.  (*Id.* at 27:13-17.)  She was not monitoring or working at the computers that ran the fax transmissions.  (*Id.* at 27:18-21.)  Abraham did not work on any of the software programs that Macaw or B2B would use for fax advertising.  (*Id.* at 32:11-

15.)   Macaw would upload phone numbers and would send out advertising; and, this operation was done from Romania.  (*Id.* at 32:24-33:10.)

Customers would generally communicate with one of the Macaw salespersons about fax advertising.  (*Id.* at 35:1-6.)  Abraham simply worked as a conduit through which certain communications would flow.  (*Id.* at 70:4-22.)  She rarely had direct contact with any of the customers.  (*Id.* at 34:12-35:17.)  Certainly, Plaintiff has presented no evidence of contact between Abraham and Defendant or communications between Macaw and Abraham as to this customer.

No witness of Imhoff has any personal knowledge of any faxing of any advertisement.  The corporate designee, Charissa Sapp, was not an employee of Imhoff on the date of alleged sending of a fax advertisement; she has document from Imhoff's records showing any wrongdoing.  (Charissa Sapp Dep. at 19-20, 24, 47-49, attached as **Exhibit D**.)  Other than the report that was sent to her by Class Counsel, she did not have any other knowledge about whether a fax was allegedly sent to Imhoff on November 22, 2006.  (*Id.* at 48-49.)  In fact, Imhoff alleges its complaint based upon a one-page fax advertisement.

## ARGUMENT

Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. Pro. 56(a).  "The *central inquiry* is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is *so one-sided* that one party

must prevail as a matter of law.'"  *Veolia Transp., Inc. v. Enjoi Transp., LLC*, Case No. 09-14162, 2010 WL 3245402 (E.D. Mich. Aug. 17, 2010)(emphasis added), citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251-52; 106 S. Ct. 2505 (1986).

A fact is material for purposes of summary judgment if proof of that fact would establish or refute an essential element of the cause of action or defense.  *Kendall v. Hoover Co.,* 751 F.2d 171, 174 (6th Cir. 1984).  Here, there are material issues of fact on three of the elements of the Plaintiff class' cause of action, which remain in dispute:

1. Whether SamMichaels is liable as the "sender" of the fax advertisement when it did not control independent contractors, B2B and Macaw, as to the fax content and distribution;

2. Whether SamMichaels is liable as the "sender" of the fax advertisement at issue when it is uncontested that SamMichaels did not authorize a three page fax and did not authorize an illegal service to be done on its behalf;

3. Whether the class members have standing to recover under the TCPA; and,

4. Whether *all* 7,018 alleged faxes were successfully sent.

For these reasons summary judgment should be denied.

# I.   PLAINTIFF HAS NOT SHOWN DEFENDANT WAS THE "SENDER" OF A FAX ADVERTISEMENT.

Plaintiff has simply not provided the undisputed facts to support a finding, as a matter of law, by this Court that Defendant is the liable "sender" of a fax advertisement to every member of the Plaintiff Class.  Defendant did not have the requisite control over the independent contractor that could render SamMichaels vicariously liable; and, it did not give final authorization to send 7,000 fax ads, consisting of three pages, to the alleged breath of

5

recipients.  At a minimum, there are questions of material fact for jurors to consider.  Denial of summary judgment is appropriate for this reason alone.

> **A.     Plaintiff Has Not Shown That SamMichaels Can Be Liable Under The TCPA For Actions of An Independent Contractor.**

Generally, one who employs an independent contractor is not vicariously liable for the contractor's negligence.  *Janice v. Hondzinski,* 176 Mich. App. 49, 53; 439 N.W.2d 276 (1989); *Hartford Fire Ins. Co. v. Walter Kidde & Co. Inc.,* 120 Mich. App. 283, 294; 328 N.W.2d 29 (1982).  This rule does not apply if there was a retaining of control of the work, *Warren v. McLouth Steel Corp.,* 111 Mich. App. 496, 502; 314 N.W.2d 666 (1981); the purpose of the control test is ***to define and limit*** the scope of the master's liability under the doctrine of *respondeat superior.  Nichol v. Billot,* 406 Mich. 284, 293–94; 279 N.W.2d 761 (1979)(emphasis added); *The Hartford Ins. Group v. Mile High Drilling Co.,* 96 Mich. App. 455, 460; 292 N.W.2d 232 (1980). The rationale for this rule is that an independent contractor is not subject to the control of the employer, and therefore the employer should not be held vicariously liable for actions outside its control. *Hartford Fire Ins.,* 120 Mich. App. at 294, 328 N.W.2d 29; *Nichol,* 406 Mich. at 296, 279 N.W.2d 761.

In TCPA actions, courts have found that defendants are not liable for acts of independent contractors as a matter of law if they did not have the right to control the means, methods and manner of executing work.  *Mey v. Pinnacle,* 2012 WL 4009718 (N.D. W. Va. 2012); *Thomas v. Taco Bell Corp.*, 879 F. Supp. 2d 1079, 1086 (C.D. Cal. 2012) (knowledge, approval and fund administration do not amount to controlling the manner and

2:10-cv-10996-MOB-MKM   Doc # 86   Filed 09/24/13   Pg 17 of 35   Pg ID 3320

method of work)[1].   Indeed, agency principles usually mark the outer limits of an entity's liability for the actions of an individual over whom it _does_ exercise some control.  *Davis Next Friend LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 662; 119 S. Ct. 1661 (1999)(Kennedy, J. dissenting)(citation omitted).

In this case, Defendant did not control the means, method and manner of the work. B2B and Macaw were independent contractors; they operated their own equipment and computers far from where Defendant is located.  Macaw alone would determine to whom any advertisements would be sent.  Neither B2B nor Macaw ever informed Mr. Shihadeh exactly what they would send, where they would send anything or the actual number that would be sent (i.e., soliciting for 10,000 single page faxes but allegedly sending just over 7,000 three-page faxes).  Macaw controlled the alleged faxing software and computers. Defendant first learned where the faxes were sent and the number of faxes sent only after this lawsuit was filed.  Plaintiff points to no evidence indicating that Defendant controlled where the faxes would be sent.  Without this required control, there is a material issue of fact as to whether SamMichaels can be found liable for the acts of the independent contractor.  For this reason, Plaintiff has not shown Defendant is the liable "sender" and the Summary Judgment Motion must be denied.

---

[1] Though *Dish Network LLC*, 28 F.C.C.R. 6574, 6583-84 (F.C.C. May 9, 2013)(decl. ruling) would explain that *Mey* and *Thomas* should not have limited consideration of liability to "classical agency" the other principles that the FCC suggested should have been considered in those cases—apparent authority and ratification—are inapplicable in this matter.  They have not been pled, either.

**B.      Plaintiff Has Not Shown That The Material Issue Of Authorization
Is Undisputed.**

SamMichaels never authorized a three-page fax advertisement to be sent to all class

members; Defendant would never have authorized an illegal service to be performed on its

behalf; and, the evidence produced by Plaintiff is insufficient to show any final authorization

from Defendant.

A defendant may be vicariously "liable under § 227(b) of the TCPA for acts of a third

party, but **only** for actions within the scope of authority granted to that third party."

*Bridgeview Health Care Ctr. Ltd. v. Clark*, 2013 WL 1154206, *5 (N.D. Ill. Mar. 19,

2013)(emphasis added); *see also Zersen v. PT Ins. Grp*.,  2012 WL 5936286, *3 (N.D. Ill.

Nov. 27, 2012).  As an Illinois Appellate Court recently stated, when considering a very

similar TCPA case: "[t]he acts of an agent beyond the scope of his authority cannot be

imputed to his principal."  *Uesco Indus., Inc. v. Poolman of Wisconsin, Inc.*, 2013 IL App

(1st) 112566, ¶61 (2013)(citation omitted.)  There is nothing in the plain language of the Act

nor its legislative history suggesting Congress intended to impose liability on a party that did

not send an unsolicited fax or authorize a third party to send an unsolicited fax on its behalf.

*See id.*, ¶50.  And, the burden of proving the existence of an agency relationship and the

scope of authority is on the party seeking to charge the alleged principal.  *Id.*, ¶61 (citations

omitted.)   Here, there is an absence of evidence showing final approval for the

advertisement allegedly sent and in the manner sent; summary judgment should be denied.

## 1.   There Is A Deficiency In Evidence Of Final Approval Of Any Three Page Fax Advertisement.

Relying on the Second Abraham Dec., Plaintiff argues that SamMichaels "ultimately approved the final form and content of Defendant's advertisement." However, this claim contained in the declaration of a person without personal knowledge of the facts of this case is inadmissible—and certainly not sufficient to prove approval or authorization.

The only person with personal knowledge of the events leading up to November 2006, who has provided sworn statements in this case, has denied that he ever authorized or approved any three-page fax advertisement.  (Exhibit A, ¶6.)  Mr. Shihadeh recalls providing certain instructions to the salespersons, regarding potential targets, but those requests were similarly not heeded.  (*See id.*, ¶ 5.)  He did not write "ad ok" on any final form of an advertisement.  (*Id.*, ¶ 7.)

For its case, Plaintiff offers the Second Abraham Dec. for the truth of the following: "B2B took the information provided by [SamMichaels] and created an advertisement;" and, SamMichaels "ultimately provided the final form and content of Defendant's advertisement." (Doc. #81 at 5-6; *see also* Second Abraham Dec., ¶7 and document B2B000022.)  Yet, Abraham has admitted to almost never having contact with any customers.  Customers would generally communicate with one of the Macaw salespersons about what they wanted for fax advertising.  (Exhibit B at 35:1-6.)  Abraham rarely had direct contact with any of the customers; and, there is no evidence, in this case, that she had contact with anyone at SamMichaels.  (*See id.* at 34:12-35:17.)

9

Moreover, the documentary support for the claim that SamMichaels "ultimately provided the final form and content of Defendant's advertisement" does not show final approval.  Indeed, in support, Plaintiff points to a check that was written by SamMichaels, a handwritten note on a copy of the check and a "*clean*" copy of an advertisement.  (*See* Doc.#81-6 at 2, 7, 23-24.)   There are pieces missing to show the final approval by this client.  First, Abraham has explained that "it [was] the custom and practice of B2B to request a customer to okay a final ad," yet no final "okay" is shown here.  (Exhibit B at 55:25-56:2.) This was an "essential step" for a client to give final approval for fax advertising to be done (*see id.* at 70:24-71:5; 220:3-11); but, there is no document produced by Abraham showing "ad okay" and, Mr. Shihadeh never provided any handwritten okay.  (*See* Shihadeh Aff., ¶7.) Second, Abraham has testified that the "N Date" on the "Client Table" was a notation for "the date a customer approved an ad."  (Exhibit B at 70:23-71:2; Doc.#81-5 at 9.)  However, here, there is **_no_** "N Date" shown.   These facts show that a disputed question of fact remains on any authorization.

### 2.    Plaintiff Has Not Shown And Cannot Show Approval By Defendant Of Any Illegal Service To Be Performed On Its Behalf.

Mr. Shihadeh has also affirmed that: he did not approve or authorize the sending of any advertisements in violation of any laws; he would not have authorized any such advertising; and, it was his understanding that the services being offered were in compliance with state and federal laws.  (Exhibit A, ¶¶4, 10.)  At the same time, there is evidence that Macaw salespersons and Abraham knew about the illegality of the service

10

being offered to Mr. Shihadeh and had complaints from other customers about the illegality of the service.  Given these facts, the finder of fact could find SamMichaels is not liable for any fax advertising because when an agent deceives a principal in entering into the alleged agreement, the principal is not liable for the illegal accord.  *See New Jersey Life Ins. Co. v. Getz*, 622 F.2d 198, 201 (6th Cir. 1980), citing Restatement (2nd) Agency §180a (1958).

Caroline Abraham has admitted that she knew about the TCPA prior to December 2005—almost an entire year before the alleged faxing in this case—and that prior to December 2005, she had received letters from customers that enclosed letters from attorneys about the illegality of the fax advertising service they were promoting.  (Exhibit B at 127:24-129:3; 142:18-25.)  Yet, there was no end to the soliciting of new customers, including SamMichaels, for the same service.  (*Id.* at 143:3-6.)[2]  Instead, when Macaw salespersons were in contact with Mr. Shihadeh, even though Abraham knew that other customers were receiving complaints from lawyers, Macaw or B2B was informing another customer: "some fax recipients may contact you and complain. Do NOT let this bother you. This is normal and harmless."  *Uesco Indus., Inc.*, 2013 IL App (1st) 112566, ¶ 21.  The customer was told to claim the ad was sent "by mistake."  *Id.*  The Illinois Appellate Court has described the letter as "[t]urning a deliberately blind eye to the fact that the unsolicited

---

[2] In fact, Abraham and certain of the employees of the Romanian company, Macaw, were involved in various deceptive business schemes prior to the commencement of B2B's fax advertising enterprise out of Romania.  (*See* Exhibit B at 144:7-10; 145:3-8, 14-20; 148:16-22.)  Abraham was charged by the Federal Trade Commission ("FTC") for engaging in false, misleading and deceptive acts in violation of FTC regulations.  (*See* Exhs. E-F to Exhibit B.)

faxes were illegal.'" *Id.*

Here, a jury could find SamMichaels is not liable as it only discussed the possibility of doing advertising that was legal.   "[C]ourts have held that 'a contract which cannot be performed without violation of a statute is illegal and void.'"  *Veolia Transp., Inc.*, 2010 WL 3245402 at *7, citing *Fed. Screw Works v. Interface Sys., Inc.,* 569 F. Supp. 1562, 1565 (E.D. Mich. 1983).   Mr. Shihadeh desired only services that were legal.   Yet, the salespersons were offering a service they reasonably knew was in violation of the law; and, the liability for that action cannot flow to Defendant, which was a victim to this fraud.   For this reason, alone, summary judgment should be denied.

## II.   PLAINTIFF HAS NOT SHOWN STANDING FOR "THE CLASS;" THERE REMAINS A DISPUTE AS TO WHO CAN RECOVER UNDER THE TCPA.

Third, Plaintiff has offered no evidence that any of the identified class member have standing to assert a claim.  This is a clear prerequisite for recovery.

It is axiomatic that the party seeking relief must have standing to sue.  *Kardules v. City of Columbus,* 95 F.3d 1335, 1346 (6th Cir. 1996). To have Article III standing, a plaintiff must show that: (1) he has suffered an injury in fact that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.  *See e.g., Am. Civil Liberties Union of Ohio, Inc. v. Taft,* 385 F.3d 641, 645 (6th Cir. 2004).   These are **not** mere pleading requirements; rather, each element must be supported in the same way as any other matter

12

on which the plaintiff bears the burden of proof. *Daubenmire v. City of Columbus*, Case No. 2:04-CV-01105, 2008 WL 4758677 (S.D. Ohio Oct. 24, 2008), citing *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561 (1992). If plaintiff cannot show standing, "it follows that he is not entitled to summary judgment." *See Walker v. 9912 E. Grand River Assoc., LP*, Case No. 11-12085, 2012 WL 1110005 (E.D. Mich. Apr. 3, 2012).

Here, an essential element of proof for each and every class member to establish standing is proof the class member owned the subject fax machine. *See G.M. Sign, Inc. v. Franklin Bank, S.S.B.*, Case No. 06 CV 949, 2008 WL 3889950, *5 (N.D. Ill. Aug. 20, 2008); *All Am. Painting, LLC v. Fin. Solutions & Associates, Inc.*, 315 S.W.3d 719, 724 (Mo. 2010)(those who owned the machines on which advertisements were received "were the parties damaged by receipt of the unsolicited advertisements" and thus "had standing to sue under the TCPA"); *Machesney v. Lar-Bev of Howell, Inc.*, Case No. 10-10085, 2013 WL 1721150,*16-*19 (E.D. Mich. Apr. 22, 2013)(identifiable class members are those "who owned the fax machines that were sent the ads in question on specific dates").

Imhoff has not met this burden for "the Class." The Plaintiff's Class Member List (used for sending class notice) does not identify legally cognizable entities with standing to sue. Just a random sampling of Plaintiff's Class Member List show that over 70% of it fails to disclose a legal entity with capacity to sue. (Wilkosz Affidavit, **Exhibit E**, ¶ 3.) The Plaintiff's Class Member List only lists *a name—**not** a legal entity such as a corporation, partnership, "LLC" or some other legally recognizable entity with capacity to bring a lawsuit.

13

For example, the Plaintiff's List of Class Members includes the designations of "Morgan Stanley," "Rite Aid Pharmacy," "State Farm Insurance," "Bed Bath & Beyond," "LA-Z-Boy Furniture Galleries" and "Einstein Bros" without any designation of the legal entity which owns the business and which may have a right to recover.  To the extent that faxes were successfully sent to fax machines and phone numbers owned by sole proprietorships and partnerships, the Plaintiff's Class Member List does not identify the legal entity with standing to bring a claim e.g. the individual's owner or partner's name. Plaintiff's class member list is based on a stale Info USA list dating back to 2003.  (*See* Doc.#81 at 1.)

Moreover, a random sampling of the Plaintiff's Class Member List shows that there are thousands of contested issues of fact regarding ownership of the fax numbers in question.   Of forty-five (45) fax numbers considered, over half (twenty-three (23)) were determined to have been subscribed to or used by an entity with a name that was different from the entity identified on the Plaintiff's Class Member List.   (*See* Dorothy Sue Merryman's Affidavit attached hereto as **Exhibit F**.)

Plaintiff offers no evidence that any of the alleged class members have standing to recover.  Plaintiff has not identified the owners of the fax lines or fax machines.  Instead, Plaintiff broadly and simply requests that "the Court enter summary judgment *in favor of the Class* and against Defendant in the amount of $3,509,000."  (Doc.#81 at 16).   General reference to "the Class" entitled to recovery is inadequate.  Plaintiff must identify those *persons* or *companies* that held the phone numbers or owned the machines at the time of

14

the alleged transmissions.  It has offered no evidence to meet this burden.

It should be noted: Rule 23 does not "abridge, enlarge or modify any substantive right."  28 U.S.C. § 2027(b).  Certification provides no substantive benefit to the individual class members.  *Amchem Products Inc. v. Windsor*, 521 U.S. 591, 613–14 (1997)(allowing individuals to pursue claims through a class action that could not be brought on their own right would impermissibly enlarge their substantive rights through procedural rules).  TCPA actions stem from "discrete injuries suffered by each recipient of the faxes"—there is no "common fund."  *Ira Holtzman, C.P.A. v. Turza*, 11-3188, 2013 WL 4506176, *5 (7th Cir. Aug. 26, 2013).  Thus, whether the 7,000 fax numbers Plaintiff claims were successfully sent the subject fax actually owned the fax machine and phone line in November 2006 is a disputed issue of fact that precludes summary judgment.

## III.   PLAINTIFF HAS NOT SHOWN SUCCESSFUL SENDING OF ADVERTISEMENTS.

In addition, there remain material issues of fact as to whether the faxes were successfully sent.  There is shaky, unreliable and dubious authentication evidence, and Plaintiff's evidence on *successful sending*—particularly what Caroline Abraham claims *her son* or *Macaw* did or did not do—is inadmissible.  Plaintiff has not proven that this issue of successful sending of 7,018 transmissions is undisputed because: (1) the Declaration upon which plaintiff relies to establish what is the Hard Drive has evidentiary deficiencies and, if admissible, the weight to give Biggerstaff's opinions based upon that Hard Drive is in the province of the jury; and, (2) there are dueling experts on the issue of successful sending,

15

such that the jury, alone, should determine the weight to be given their opinions.

> **A.    Plaintiff Has Not Provided Admissible Evidence To Show Successful Sending Of 7,018 Fax Advertisements.**

Initially, Plaintiff does not tender any competent, admissible evidence for its claim that this Court can find, as a matter of law, that "defendant used a telephone facsimile machine, computer or other device to send one or more faxes to plaintiff's facsimile machine." Plaintiff offers the First Abraham Dec. and the Second Abraham Dec. for such an assertion. (*See id.* at 4-5.) However, such declarations contain hearsay within hearsay; and, Abraham has admitted to not having personal knowledge of *either* the conversations exchanged with the customer or the faxing of any fax advertisements—a service performed by Macaw IT persons. In turn, Plaintiff relies on the opinions of its retained expert, Robert Biggerstaff, for claiming successful sending to over 7,000; but, this expert bases his findings on the contents of the Hard Drive—a Hard Drive that Plaintiff would need to get into evidence only through the First Abraham Dec., a "sworn statement" not based upon personal knowledge and imbued with hearsay. There is not sufficient, admissible evidence for Plaintiff's claim of successful sending to "the Class"; and, the motion should be denied on this ground.

Relying solely on its retained expert's opinions, Plaintiff asserts that "the evidence is uncontroverted that B2B used a computer-based fax broadcasting application…to send the subject fax advertisements on behalf of Defendant." (Doc.#81 at 12.) However, Mr.

Biggerstaff's Report, as cited, pertains to his review of a Hard Drive, which Plaintiff has not authenticated or shown as admissible.

"The district court has an 'obligation to ensure that the basis of an expert's opinion is both reliable and reasonable.'" *United States v. Tipton*, 269 F. Appx 551, 560 (6th Cir. 2008), citing *Trepel v. Roadway Exp., Inc.,* 194 F.3d 708, 720 (6th Cir.1999). It is improper to try and use an expert as a "conduit" for the admission of otherwise inadmissible hearsay statements. *See id.* (citations omitted.) Recitation of otherwise inadmissible facts is not admissible under Rule 703. *See McDevitt v. Guenther*, 522 F. Supp. 2d 1272, 1294 (D. Haw. 2007). "Under Rule 703, an expert may rely on hearsay in formulating his opinion— provided the requirements of Rule 702 are met—but the evidence is not admissible for the truth of the matters asserted." *Loeffel Steel Products, Inc. v. Delta Brands, Inc.*, 387 F. Supp. 2d 794, 808 (N.D. Ill. 2005), citing *United States v. Gonzales*, 307 F.3d 906, 910 (9th Cir. 2002); *TK-7 Corp. v. Estate of Barbouti*, 993 F.2d 722, 734 (10th Cir. 1993). "Rule 703 was never intended to allow oblique evasions of the hearsay rule." *Loeffel Steel Products, Inc.*, 387 F. Supp. 2d at 808. In addition, declarations used to support a motion for summary judgment must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the declarant is competent to testify on the matters. Fed. R. Civ. Pro. 56(c)(4).

Here, Plaintiff attempts to use its expert's opinions to get in inadmissible hearsay of Caroline Abraham, as contained in her declaration, which contains statements not based

17

upon personal knowledge.  The First Abraham Dec. is based almost entirely on what others told Caroline Abraham or did themselves, including for example: that her "son Joel Abraham, who [had] helped [Caroline] with [her] business computers, was able to find lists of fax numbers on backup disks and on B2B computers…" (First Dec. ¶ 4); "Joel found the lists of fax numbers and Joel delivered the backup disks and hard drive…" (*Id.*, ¶ 4); "Joel brought one or both of the DVD disks to depositions taken on January 9, 2009 and he sent the hard drive and perhaps the other DVD disk through his attorney" (*Id.*); "[Caroline] [is] also informed and believe[s]…[the] backup DVDs were created by Joel Abraham…" (*Id.*, ¶ 5); and, "Macaw's …customary business operations were conducted as follows…" (*Id.*, ¶ 6).

Moreover, proper foundation has not been shown under Rule 901.  *See e.g., Cooper v. Eagle River Memorial Hosp., Inc.*, 270 F.3d 456, 463 (7th Cir. 2001)(evidence conforms to Rule 901(a) only if the proponent "produce[s] evidence sufficient to support a finding that the item is what the proponent claims it is.")  Abraham has provided a declaration regarding what the Hard Drive purports to be, but it is uncontested that she only provided "secretarial" tasks for Macaw.  Thus, it is *Macaw's* business records at issue, not Caroline Abraham's records.  Plaintiff has no testimony from a representative of *Macaw* regarding what the Hard Drive purports to be or to represent.  It is not enough for Plaintiff to rely exclusively on testimony from Caroline Abraham, who was never employed by Macaw or involved in the transmission of faxes for which Macaw was solely responsible.  That Abraham lacks personal knowledge for her first declaration is shown, for example, by her testimony that the

Hard Drive has not been altered (Doc.#81-5, ¶5); this is contradicted by the absence of trace logs that likely should be present in the unaltered form of the Hard Drive. (Canfield Report ¶ 8, attached hereto as **Exhibit G**).

The Declaration also lacks trustworthiness for various reasons including: it was executed in December 2010 in New York without any specific reference to this case; it regards a foreign company, Macaw, and Abraham's *beliefs* about how that business operated and sent faxes; and, it pertains to Abraham being "informed" and "believ[ing]" facts about the faxing, even though she did not own, operate or work for the company that controlled the alleged faxing. In addition, in terms of demonstrating sufficient chain-of-custody as to these materials, Caroline Abraham could only testify that she *believed* Joel passed the Hard Drive on to plaintiff's counsel.

It follows that Robert Biggerstaff's opinions about successful sending of faxes fails as Plaintiff has not overcome the evidentiary deficiencies as to the Hard Drive that he relies upon to form his opinions[3]. Biggerstaff's report is based upon his review of the Hard Drive; all he says in his report is that he received the electronic media back in or around February 2009—well before the filing of this lawsuit. No chain of custody or foundational underpinning is provided. Absent admissible testimony concerning the authenticity, relevancy and chain of custody of the purported Hard Drive, Biggerstaff's testimony

---

[3] To the extent the Court it is of a mind to consider Biggerstaff's testimony, Defendant is entitled to a hearing pursuant to *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

concerning data allegedly contained in that hard drive, is inadmissible.   The Plaintiff's

Motion for Summary Judgment should be denied on this ground.

> **B.     The Clashing Opinions Of The Two Experts Are To Be Weighed
>            By The Jury; Summary Judgment Is Improper.**

Conflicts in the evidence on factual issues are not to be resolved on summary

judgment, particularly where those conflicts arise from competing expert opinions, the

resolution of which is a matter reserved to the jury.  *See Sightsound.com Inc. v. N2K, Inc.,*

391 F. Supp. 2d 321, 354 (W.D. Pa. 2003), citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 255, 106 S. Ct. 2505 (1986).  In a case of dueling experts, it is left to the trier of fact,

not the court, to decide how to weigh competing expert testimony.  *Wipf v. Kowalski*, 519

F.3d 380, 385 (7th Cir. 2008), citing *Spesco, Inc. v. Gen. Elec. Co.*, 719 F.2d 233, 237-38

(7th Cir. 1983) ("It is within the province of the jury to determine which of two contradictory

expert statements is deserving of credit.").

While Biggerstaff concludes that 7,022 fax numbers received a 3-page fax, David

Canfield, Defendant's expert, has concluded that the number of successful transmission

cannot be determined given the fax logs and lists contained on the Hard Drive.  (*See* Exhibit

G.)  Unlike thousands of other fax broadcasts on the Hard Drive, Canfield explains that

there are no "trace logs" on the Hard Drive for each of the 7,022 transmissions relating to

SamMichaels.  (*Id.*, ¶8).  This is significant because, as explained by Biggerstaff, "a trace

log is the only log that can dispositively show that a fax transmission was, or was not, a

successfully completed fax transmission." (*Id.*, ¶8).  Based on standards in the industry and

his own personal experience, Canfield also opines that a one-page black and white fax should successfully transmit between 45 and 65 seconds, and that any transmission outside this range has an ever increasing chance of failure due to a large number of causes.  (*Id.*, ¶ 20).  Collectively, Canfield's opinions would aid the jury; and, his conclusions are based upon his application of scientific reasoning.

These conclusions and testimony by defendant's expert preclude the finding of summary judgment for the plaintiff; otherwise, the court would be judging the credibility of the experts and the weight to be given the opinion of each.  That is for the jury to decide.

## IV.   PLAINTIFF HAS NOT PROVEN THE PLAINTIFF CLASS IS OR WOULD BE ENTITLED TO TREBLE DAMAGES OR PREJUDGMENT INTEREST.

Without any citation to any fact in this case, Plaintiff claims that "the Class" should be awarded treble damages--$1,500 per alleged fax advertisement.   (*See* Doc.#81 at 14.) There is no justification for any such award now or later.

There are contested issues of fact on liability—including whether SamMichaels could be liable for the unauthorized acts of an independent contractor.   And, SamMichaels, a small company, had no knowledge of the federal statute.   Moreover, SamMichaels never authorized or approved any advertisements in violation of any laws.

This Court should not exercise its discretion to treble damages as SamMichaels did not know of the illegal behavior promised by the independent contractor and act anyway. *See Texas v. Am. Blastfax, Inc.*, 164 F. Supp. 2d 892, 901 (W.D. Tex. 2001)(awarding treble damages for TCPA violations that occurred after defendants were well aware of the

21

statute); *Manufacturers Auto Leasing, Inc. v. Autoflex Leasing, Inc.,* 139 S.W.3d 342, 346–47 (Tex. Ct. App. 2004)("[t]he TCPA is willfully or knowingly violated when the defendant knows of the TCPA, knows he does not have permission to send the fax ... and sends it anyway"); *Covington & Burling v. Intl. Mktg. & Research,* No. Civ. 01–0004360, 2003 WL 21384825, *8 (D.C. Super. Ct. Apr. 17, 2003) (violations were "willfully or knowingly" made when defendant admitted he was aware of the TCPA and was previously involved in TCPA litigation).  As the Court found in *Harris v. World Fin. Network Nat. Bank*, 867 F. Supp. 2d 888, 895 (E.D. Mich. 2012), it is _not_ enough to demonstrate that Defendant "intended to use" equipment allegedly in violation of the TCPA; instead, to be liable for treble damages, there must be a showing of "'reckless disregard' for plaintiff's rights under the TCPA."  *See also Manno v. Healthcare Revenue Recovery Grp., LLC,* 289 F.R.D. 674, 696 (S.D. Fla. 2013)("willful and treble damages" would be inappropriate where the defendant believed that it was complying with the statute.)[4]

Moreover, in this case, the Plaintiff Class is already seeking $500, which would be approximately 5,000 times the actual damages sustained from a successful sending of a one-page fax advertisement, which is what Imhoff alleges.  There is no need for this Court to exercise its discretion to allow plaintiff or others 15,000 times the actual damages.  The

---

[4] At a minimum the issue is "premature for resolution at this time" and should only be addressed "if and until Plaintiff and the class prevail at trial."  *Savanna Grp., Inc. v. Trynex, Inc.*, 10 C 7995, 2013 WL 4734004 (N.D. Ill. Sept. 3, 2013)(denying summary judgment for the plaintiff given the factual disputes over authorization).

Plaintiff's prayer for treble damages should be denied.

Prejudgment interest is not properly sought by this Plaintiff Class; this request for relief should similarly be rejected.  In *Young v. Langley,* 840 F.2d 19 (6th Cir. 1988), the Sixth Circuit affirmed the denial of prejudgment interest in a case where "the district court concludes that the plaintiff has been compensated fully for the injury he has suffered" because the plaintiff has been made whole and there is no reason to grant the award."  *See also W. Va. v. United States,* 107 S. Ct. 702, 706 (1987); *Gen. Motors v. Devex Corp.,* 461 U.S. 648, 654-55 (1983).  Moreover, because prejudgment interest is compensatory in nature, it should not be awarded if it would result in the overcompensation of the plaintiff. *Wickham Contracting Co., Inc. v. Local Union No. 3, Int'l Bhd. of Elec. Workers, AFL-CIO,* 955 F.2d 831, 834 (2d Cir. 1992), *citing Brooklyn Sav. Bank v. O'Neil,* 324 U.S. 697, 699 (1945)(interest not recoverable on the damages provided by Fair Labor Standards Act).

The instant action is based on federal question jurisdiction.  (Doc.#1, ¶ 6.)  Under the analysis set forth by the Supreme Court, as well as the Sixth Circuit, prejudgment interest is simply not appropriate in this case.  Significantly, in the event of a judgment entered on their behalf, the class members will be fully compensated—for the receipt of a single fax—by virtue of the $500 statutory damages under the TCPA.  *See e.g, see Missouri ex rel Nixon v. American Blast Fax, Inc.,* 196 F. Supp. 2d 920, 923 (D. Mo. 2002)(the average cost for the receipt of a single fax page ranges from six cents to seventeen cents, and further explained that this might be an overestimation).

One court has already denied such recovery.  In *Kopff v. Roth*, CIV.A.05 798 JDB, 2007 WL 1748918, *2 (D.D.C. Jun. 15, 2007), the court stated: "Prejudgment interest is not appropriate in this case, which involves a statutory damages remedy that far exceeds actual damages and is fundamentally punitive in nature."  Here, as in *Kopff,* the $500 statutory amount far exceeds any class members' actual damages for receipt of a facsimile. Prejudgment interest is inappropriate and should not be awarded.

WHEREFORE, Defendant SamMichaels requests this Court deny plaintiff's motion for summary judgment (Doc.#81), deny Plaintiff's requests for treble damages and prejudgment interest and grant such other relief as this Court deems appropriate.

SMITHAMUNDSEN LLC

By:   /s/ Molly A. Arranz
       Molly A. Arranz
       Attorneys for Defendant
       150 North Michigan Ave. #3300
       Chicago, Illinois 60601
       Direct Dial:  (312) 894-3307
       marranz@salawus.com

PLUNKETT COONEY

By:   Robert G. Kamenec (P35283)
       Thomas P. Vincent (P32794)
       Attorneys for Defendant
       38505 Woodward Avenue, #2000
       Bloomfield Hills, Michigan  48304
       Direct Dial:  (248) 901-4068
       rkamenec@plunkettcooney.com
       tvincent@plunkettcooney.com

Dated:  September 24, 2013

## CERTIFICATE OF SERVICE

I hereby certify that on September 24, 2013, I electronically filed **Defendant's Response In Opposition To Plaintiff's Motion And Memorandum In Support Of Summary Judgment, And Brief In Support Of Response In Opposition To Plaintiff's Motion And Memorandum In Support Of Summary Judgment**, with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all parties of record.

SMITHAMUNDSEN LLC

By:   /s/ Molly A. Arranz
Molly A. Arranz
ARDC #6281122
SmithAmundsen LLC
Attorneys for Defendant
150 North Michigan Ave. #3300
Chicago, Illinois  60601
Direct Dial: (312) 894-3307
marranz@salawus.com

Dated:  September 24, 2013

1