**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

IMHOFF INVESTMENT, LLC, a Michigan
limited liability company, individually and as
the representative of a class of similarly
situated persons,

      Case Number: 10-10996

   Plaintiff,      HON. MARIANNE O. BATTANI

v.

SAMMICHAELS, INC.,

   Defendant.
             /

**OPINION AND ORDER DENYING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT**

  Before the Court is Plaintiffs' Motion for Summary Judgment (Doc. No. 81). After the motion had been filed, but before the Court heard oral argument on October 24, 2013, Plaintiff and Defendant filed motions to strike various bits of evidence and/or arguments in the filings. The briefing on the motions to strike has been completed, and for the reasons that follow, the Court **DENIES** the dispositive motion (Doc. No. 81), **DENIES** Plaintiff's motion to strike (Doc. No. 91), and **GRANTS IN PART and DENIES IN PART** Defendant's motion to strike (Doc. No. 92).

**I. STATEMENT OF FACTS**

  This class action lawsuit filed on behalf of Plaintiff Imhoff Investment, LLC ("Imhoff") arises out of an alleged violation of the Telephone Consumer Protection Act ("TCPA" or the "Act"). The TCPA prohibits the use of "any telephone facsimile machine, computer or other device to send, to a telephone facsimile machine, an unsolicited advertisement." 47 U.S.C.

§ 227(b)(1)(C). According to Plaintiff, Defendant SamMichaels Inc. "(SamMichaels") hired a fax broadcaster, Business to Business Solutions ("B2B"), which was operated by Caroline Abraham, to advertise and promote Defendant's clothing store and tuxedo rental business. Defendant became aware of B2B after it received a solicitation offering fax advertising services. (Doc. No. 81, Ex. C, Shihadeh Dep., 10:1-3, 11:21-25, 12:1-4, 40:7-8, 18-20). Maher Shihadeh, the sole owner of SamMichaels, talked with B2B about its services and expressed interest in B2B's fax advertising program. (Id., 12:12-21, 13:10-19). B2B provided "secretarial services" for a Romanian company, Macaw S.R.L. B2B utilized phone lines for Macaw's faxing and collected paper checks for Macaw.

Shihadeh worked with B2B to create a fax advertisement and filled out a document from B2B with the header, "TELL US WHAT TO WRITE IN YOUR FREE ADS," with information and details about Defendant's business and services. (Id., 17:2-7, pp. 18-20, Ex. 1; See also Ex. E, Second Declaration of Caroline Abraham (6/21/2011) ("Second Abraham Decl.") at ¶ 6). B2B took the information provided by Shihadeh and created an advertisement for the business. (Doc. No. 81, Ex. C, Shihadeh Dep., Ex. 3; Second Abraham Dec., ¶ 6). On November 21, 2006, Defendant paid B2B $468.00 to send out over 10,000 fax advertisements on its behalf. (Doc. No. 81, Ex. C, Shihadeh Dep., 35:23-25, Ex. 9; Second Abraham Dec., ¶ 7). Shihadeh requested that B2B send Defendant's ads to the zip codes and area code surrounding Defendant's business. (Doc. No. 81, Ex. C. Shihadeh Dep, 19:10-15; 31:1-7).

On October 1, 2012, the Court granted Plaintiff's motion for class certification pursuant to Federal Rule 23, certifying a class defined as follows:

> All persons who were successfully sent a fax on November 21, 2006, or November 22, 2006, by or on behalf of Sam Michaels Menswear -

2

>Tuxedo of Farmington Hills, Michigan, offering "Buy 1 Suit--Get 2
>Free" and the "cheapest Tuxedo Rental Around. . .$55." [(the "Class")

(Doc. 67). Four opt-out requests were received subsequent to notice.

Plaintiff argues the class is entitled to judgment in the amount of $3,509,000 ($500 per each of the 7,018 violations of the TCPA). In addition, should the Court find Defendant's violations were "willful or knowing," statutory damages are trebled, and Plaintiff asks the Court to award the class $10,527,000. Lastly, Plaintiff asks for prejudgment interest on the damage award from the date of the violations under Mich. Comp. Laws § 600.6013.

## II. STANDARD OF REVIEW

Summary judgment is appropriate only when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986). Rule 56 mandates summary judgment against a party who fails to establish the existence of an element essential to the party's case and on which that party bears the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

When reviewing a motion to dismiss, the Court "must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the complaint contains enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). Although the federal procedural rules do not require that the facts alleged in the complaint be detailed, "'a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than

3

labels and conclusions, and a formulaic recitation of a cause of action's elements will not do.' " Twombly, 550 U.S. at 555; Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

## III. ANALYSIS

### A. PRELIMINARY MATTERS

Before turning to the merits of Plaintiff's dispositive motion, the Court must decide what evidence to consider. Plaintiff filed a Motion to Strike Paragraphs 4, 5 (sentence 2), 7, and 10 of the September 24, 2013, Affidavit of Maher Shihadeh (Doc. No. 91). Defendant filed a Motion to Strike a Portion of and an Exhibit to Plaintiff's Reply Brief (Doc. No. 92).

#### 1. Shihadeh's Affidavit

Shihadeh submitted an affidavit in support of Defendant's response to the dispositive motion. (See Doc. No. 86, Ex. A). Plaintiff asserts that the identified paragraphs of the affidavit contradict Shihadeh's deposition testimony. Defendant disagrees.

Case law is clear: if Shihadeh has offered a declaration that contradicts his prior testimony, it cannot be considered. Under longstanding Sixth Circuit authority, "[A] party cannot create a genuine issue of material fact by filing an affidavit, after a motion for summary judgment has been made, that essentially contradicts his earlier deposition testimony." Penny v. United Parcel Service, 128 F.3d 408, 415 (6th Cir.1997). Accordingly, the Court compares the testimony to determine whether a direct contradiction exists.

4

In Paragraph 5 sentence two of his Affidavit, Shihadeh states, "I recall telling the salesperson during the discussion of the advertisement that any advertising should be sent to those in the 48334 zip code that also had a 248 area code." (Doc. No. 86, Ex. A ¶ 5, sentence two). In contrast, in his October 27, 2011 deposition, Shihadeh failed to mention the restrictions. (See Doc. No. 81, Ex. C). Nevertheless, he never testified that he imposed no restriction. Moreover, Shihadeh testified that, to "the best of his knowledge," he had told everything about his conversation with B2B. (Doc. No. 81, Ex. C at 46).

Although the affidavit and deposition provide a basis for Plaintiff to challenge Shihadeh's credibility, there is no direct contradiction here. Shihadeh left himself room to add something he remembered. Therefore, the Court declines to strike Paragraph 5, sentence 2. Defendant is free to argue that the "248 area code" creates an inference that it never gave B2B final approval to send its faxes; and, Plaintiff is free to challenge that testimony. This also is the case relative to the zip codes.

Plaintiff next argues that Paragraphs 4 and 10 of the Shihadeh Affidavit should be stricken. During his deposition, Shihadeh was asked specifically whether he discussed the legality of sending out advertisements by fax with the salesperson, and responded no. (See Doc. No. 81, Ex. C at 13). Yet, in his declaration, Shihadeh states that it was his "understanding that the services offered by the salesperson were in compliance with state and federal laws, and that he did not and would not have authorized B2B to send any such documents in violation of any laws." (Doc. No. 86, Ex. A at ¶¶ 4, 10) These two statements are not contradictory. The latter merely establishes that he did not know that it was illegal.

Lastly, in Paragraph 7, Shihadeh stated that he was instructed to return the one-page advertisement with his client number and approval, but that he "never provided"

5

"handwritten approval on the form of the ad as instructed." (Doc. No. 86, Ex. A at ¶ 7). In his deposition, however, Shihadeh stated that at some point he approved the content of the ad. (Doc. No. 81, Ex. C at 28). Again there is no direct contradiction between the deposition and the declaration. Even if Shihadeh approved the ad, he did not comply with the procedure specified by B2B.

More globally, Plaintiff argues that Shihadeh testified forty-nine times during his deposition that he could not recall many or most of the details of the B2B faxing campaign. Plaintiff concludes that the declaration should be stricken given Shihadeh's lack of memory. Plaintiff's argument goes to the weight of the testimony, not the admissibility. The Court declines to render any ruling on the credibility of a witness, which is not allowed by Rule 56. Accordingly, Plaintiff's motion to strike is denied.

### 2. Timeliness of Biggerstaff's Declaration Affidavit

Defendant's motion to strike turns on its position that Plaintiff raised arguments pertaining to apparent agency and ratification in its reply that were not previously raised in the dispositve motion, and attached an untimely declaration from Robert Biggerstaff.[1] The Court addresses the latter first. The Declaration of Robert Biggerstaff was served in

---

[1] Although Plaintiff argues the merits of its opposition to Defendant's motion under Rule 12(f), the Court notes that Rule 12(f) addresses a court's authority to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). A motion to strike under Rule 12(f) is limited to a pleading, as identified in Rule 7(a). Pursuant to Rule 7(a), the term pleading includes a complaint, an answer to a complaint or counterclaim or crossclaim, a third party complaint or answer thereto, and a rely to an answer, if ordered by the court. Fed. R. Civ. P. 7(a). Therefore, Rule 12(f) grants no authority to the court to strike motions or supporting briefs, responses or replies, or portions of these papers or evidence filed in support. See Fox v. Michigan State Police Dep't, 173 F. App'x 372, 375 (6th Cir. 2006); Lucas v. JBS Plainwell, Inc., 1:11-CV-302, 2011 WL 5408843 (W.D. Mich. Nov. 8, 2011).

Plaintiff's reply brief. Plaintiff contends that Biggerstaff Declaration is not untimely because Biggerstaff offers no expert opinion in the declaration.

Plaintiff offers the declaration as support for the authenticity and admissibility of the B2B computer and the contemporaneously archived nature of the computer data. A review of the declaration shows that Biggerstaff offers his opinion regarding the hard drive and DVDs relative to the faxing activity done by Macaw. Biggerstaff adds that he found "no evidence of any attempts at alteration or manipulation of the B2B records after the fact, or any evidence of inconsistent metadata." (Doc. No. 90, Ex. 2 at 2.) Biggerstaff claims that "the B2B records [are] internally consistent" in that "customer lists in the B2B records that identified unique customer identifiers were the same identifiers that were attached to the fax images which contained information about the same business entities." (Id.) He similarly opines as to records from third parties matching records from the B2B records. (Id. at 3.) The Court disagrees with Plaintiff's characterization of the testimony; Biggerstaff offers his opinion as an expert.

The Court has discretion to exclude the untimely-disclosed testimony of an expert witness. Estes v. King's Daughters Med. Ctr., 59 F. App'x 749, 753 (6th Cir. 2003) (citing Pride v. BIC Corp., 218 F.3d 566, 578-79 (6th Cir. 2000) (upholding the exclusion of untimely expert-witness reports and affidavits); Moore, Owen, Thomas & Co. v. Coffey, 992 F.2d 1439, 1446 (6th Cir. 1993) (noting that the district court "has the discretion to refuse the filing of untimely affidavits"); Sexton v. Gulf Oil Corp., 809 F.2d 167, 170 (1st Cir. 1987) (affirming preclusion of testimony due to untimely designation of expert witness).

The Scheduling Order in this case required Plaintiff to provide reports from its retained experts to Defendant no later than October 13, 2011. Biggerstaff's declaration was disclosed only in Plaintiff's reply brief long beyond the deadline for expert opinion.

7

Defendant had no opportunity to cross-examine Biggerstaff on his new opinions, or offer a rebuttal opinion. Consequently, the Court grants Defendant's request to strike the declaration, and it plays no role in the resolution of the dispositive motion.

### 3. Legal Theory

Plaintiff built this case on its theory was that the TCPA is a strict liability statute, and Defendant violated the Act by sending "an unsolicited advertisement to Plaintiff's facsimile machine." (See Doc. No. 1 at ¶ 10). In its reply brief, Plaintiff argues a vicarious liability theory.

According to Defendant, Plaintiff did not plead vicarious liability in the Complaint or even in the summary judgment motion, but raised the theory for the first time in the reply brief. Defendant asserts that the Court must strike the arguments relative to apparent agency and ratification because they were not raised previously.

Defendant is correct that a plaintiff cannot bring new legal theories for recovery in a summary judgment motion. Jocham v. Tuscola Cnty., 239 F. Supp. 2d 714, 732 (E. D. Mich. 2004) (rejecting attempt to change factual allegations to support new claim); Hickman v. Sloan Fluid Accessories, Inc., 833 F. Supp. 2d 828 (E.D. Tenn 2011) (rejecting arguments advanced in a reply brief for summary judgment on a claim of retaliatory transfer when the opening brief only addressed a termination claim). Here, however, the Court finds that Plaintiff's theory is not new. Plaintiff included an allegation that the facsimile was sent on behalf of Defendant in Paragraph 15 of its Complaint, which defines that class as "holders of telephone numbers to which a facsimile transmission was sent on behalf of Defendant. . . ." (Doc. No. 1 at ¶ 15). After the Complaint was filed, the Federal Communications Commission clarified that the "on behalf of" wording in the TCPA and implementing regulations includes vicarious liability, as well as apparent authority and

ratification. Therefore, Plaintiff may proceed on the vicarious liability theory, and Defendant's motion is denied as to this request`.

### B. IS SAMMICHAELS A SENDER?

The TCPA prohibits the use of "any telephone facsimile machine, computer or other device to send, to a telephone facsimile machine, an unsolicited advertisement." 47 U.S.C. § 227(b)(1)(C). It also creates a private right of action whereby "[a] person or entity may [bring] an action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater. . . ." 47 U.S.C. § 227(b)(3)(B).

The Federal Communications Commission includes in the definition of sender, **the person "on whose behalf"** a fax broadcaster sends a fax. 47 C.F.R. § 64.1200(f)(10). The language, therefore, includes a defendant that did not physically send the fax. Nevertheless, not until May 2013, when the Federal Communications Commission (FCC) issued a declaratory ruling did the "on behalf of" language get a definitive interpretation. Notably, the relevant regulations define a "sender" as "the person or entity on whose behalf a facsimile unsolicited advertisement is sent or whose goods or services are advertised or promoted in the unsolicited advertisement." 47 C.F.R. § 64.1200(f)(10); see also In Re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991, 10 F.C.C.R. 12391, 12407-08 (1995) (clarifying that "the entity or entities on whose behalf facsimiles are transmitted are ultimately liable for compliance with the rule banning unsolicited facsimile advertisements"). In explaining the phrase, the FCC found a formal relationship was not necessary to establish "on behalf of" liability. A plaintiff could use ratification or apparent authority to establish vicarious liability under federal common law agency principles. FCC Declaratory Ruling, ¶ 1.

9

The FCC went on to illustrate the types of evidence that would support vicarious liability albeit in the telemarketer context. To support a theory that a telemarketer is the seller's authorized representative with apparent authority, the following might be considered:

> whether the seller allows the outside sales entity access to information and systems that normally would be within the seller's exclusive control, including: access to detailed information regrading the nature and pricing of the seller's products and services to the seller's customer information. The ability by the outside sales entity to enter consumer information into the seller's sales or customer system, as well as the authority to use the seller's trade name, trademark, and service mark may also be relevant. It may also be persuasive that the seller approved, wrote or reviewed the outside entity's telemarketing scripts.

(Id. at ¶ 46). Even though the FCC's declaratory ruling addressed the definition of seller within the telemarketing context, not sender within the faxing context, the definitions are similar and the ruling has been applied to senders as well. See Savanna Group, Inc. v. Trynex, Inc., 2013 WL 4734004, No. 10C7995 (N. D. Ill. Sept. 3, 2013) (noting the similarity of the definitions of sellers and senders and applying the ruling to senders in the faxing context). The defendant in Savanna Group, like SamMichaels, had engaged the services of B2B. The court observed that the FCC has emphasized that the TCPA incorporates an expansive scope of vicarious liability under federal common law agency principles. Consequently, the court considered the definition of agency set forth in the Restatement (Third) of Agency: agency is the "fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act." Restatement (Third) Agency § 1.01. Because the defining element of agency "is the principal's right to control the agent's actions," the district court considered whether the principal possessed "[t]he power to give interim instructions" an

element that "distinguishes principals in agency relationships from those who contract to receive services provided by persons who are not agents." Id., cmt. f(1) (2006). The district court concluded that the disputed issues of fact prevented a decision on summary judgment. Id. (citing Bridgeview Health Care Ctr. Ltd. v. Clark, 09 C 5601, 2013 WL 1154206 (N.D. Ill. Mar.19, 2013) (material factual dispute on whether B2B exceeded authority by sending faxes outside certain authorized geographical range); Creative Montessori v. Ashford Gear LLC, No. 09 C 3963, Doc. No. 157 ("In the instant case, the key fact on which defendant bases its motion, that it instructed B2B to send facsimiles only to a list of customers provided by defendant, remains in dispute.")." Compare Am. Copper & Brass, Inc. v. Lake City Indus. Prods., Inc., 1:09-CV-1162, 2013 WL 3654550 (W.D. Mich. July 12, 2013) (awarding the plaintiff summary judgment against a defendant that had hired B2B to send a mass fax, and finding vicarious liability could be established if necessary, based on the defendant's response to B2B's advertisement, payment for VoIP lines, completion of a questionnaire, and editing and approval of a fax that would be sent to approximately 10,000 numbers, even though the defendant did not know how the numbers were generated)).

In the case before this Court, there are factual disputes that go to the issue of whether B2B and Macaw were independent contractors or agents relative to the fax content and distribution. SamMichaels suggests that it never authorized the faxing that took place. First it relies on the absence of a N Date, which Caroline Abraham maintained in a "Client Table" to signify the date that a customer approved an ad. There is no N Date for SamMichaels, and there is no handwritten approval of the ad by Shihadeh. Plaintiff's position is that the absence of a N Date is immaterial because there is a Status T notation, which means that "the customer approved the advertisement, faxes were sent, and B2B

11

had received a payment. (Doc. No. 95, p. 9 at ¶ 12). Moreover, it is undisputed that Defendant wrote a check for $468 and wrote its B2B client number in the memo line of the check; that Defendant made a copy of the check, and mailed it to B2B; and that Defendant wrote on the check copy, "I have mailed this check" noting the date and time, and Shihadeh signed it and faxed it to B2B. The Court agrees with Plaintiff that the undisputed facts render the absence of a N Date immaterial.

More significant to the issue of control, is the evidence that the fax at issue is a three-page advertisement. Two pages advertise the services of B2B, and were geared to get leads. In addition, Shihadeh testified that he never approved a three page fax, and he asked for targeted zip codes and numbers with a 248 area code. Here, the Court finds that the issue of agency turns on the control exercised by SamMichaels over B2B, which cannot be determined as a matter of law. Therefore, Plaintiff's request for summary judgment on the issue of whether Defendant is a sender is denied.

### C. HAS PLAINTIFF SHOWN AS A MATTER OF LAW THAT DEFENDANT SENT 7,018 FAX ADVERTISEMENTS?

The parties dispute whether Plaintiff's proof demonstrates as a matter of law that Defendant successfully sent 7,018 fax advertisements. In forming his opinion, Biggerstaff examined the contents of a hard drive, supplied by Abraham, to establish the list of SamMichaels's fax recipients. (Doc. No. 81 at 12). He concludes that B2B's fax transmission logs show that on November 21, 2006, and November 22, 2006, Defendant's advertisement was sent by fax successfully to 7,022 different telephone numbers; however, four potential plaintiffs opted out of this case. Defendant refutes the evidence of fax transmission records based upon admissibility of the hard drive.

Defendant asserts that Abraham's testimony is hearsay. She had no first-hand knowledge of the hard drive, which is not authenticated and, therefore, not admissible. Because the hard drive is not admissible, any information extracted from electronic data cannot be used.

Rule 56(c)(2) allows a party to object to "the material cited to support or dispute a fact" because it "cannot be presented in a form that would be admissible in evidence." It is undisputed that Imhoff did not provide the fax at issue. In challenging the declarations of Abraham on hearsay grounds, Defendant argues that she had no personal knowledge of the service performed by Macaw IT employees. For example, Abraham lacks knowledge as to how the data was collected, entered, or organized. Abraham was never employed by Macaw or involved the transmission of faxes. Further, her testimony that the hard drive was not altered, is contradicted by Defendant's expert, who stated that trace logs would be present in the unaltered form of the hard drive. (Doc. No. 86, Ex. G). Further, her declaration was made in connection with another case, not this one. In sum, Defendant concludes that Abraham cannot authenticate this evidence: her testimony is based on her contention that her son found the list of fax numbers and that she believes her son created the backup DVDs.

The very argument advanced here by Defendant was rejected in Van Sweden Jewelers, Inc. v. 101 VT, Inc., No. 1:10-cv-253, 2013 WL 4074620 (W. D. Mich. June 21, 2012). The district court noted that the business records exception applied to the hearsay objection:

> Abraham can sufficiently establish the foundation for admissibility under the business records exception to the hearsay rule. Fed. R. Evid. 803(6). "Rule 803(6) does not require that the custodian personally gather, input, and compile the information memorialized in a business record." United States v. Salgado, 250 F.3d 438, 451-52 (6th Cir.2001) (quoting United States v.

13

>   Weinstock, 153 F.3d 272, 276 (6th Cir.1998)). The custodian of the records need not be in control of or have individual knowledge of the particular corporate records, but need only be familiar with the company's recordkeeping practices. Id. at 452 (citing In re Custodian of Records of Variety Distrib., Inc., 927 F.2d 244, 248 (6th Cir.1991)). Likewise, "[t]o be an" other qualified witness," it is not necessary that the person laying the foundation for the introduction of the business record[s] have personal knowledge of their preparation. Id. (quoting Dyno Constr. Co. v. McWane, Inc., 198 F.3d 567, 575-76 (6th Cir.1999)). Defendants' challenges to the accuracy of the fax logs concern the weight of the evidence, rather than its admissibility. See, e.g., CE Design Ltd., 2010 WL 3327876, at *3 (citing Holtzman v. Turza, No 08-2014, 2009 WL 3334909, at *3 (N.D.Ill. Oct.14, 2009), and leaving for trial any issue about the accuracy of the fax logs themselves). The Court also rejects as speculative Defendants' argument that someone could have altered the hard drive data.

The court also rejected the authenticity argument:

>   Defendants argue that Plaintiff's evidence is inadmissible because the fax transmission logs lack the foundation to satisfy the requirements of Fed.R.Evid. 901(a) where Caroline Abraham does not have personal knowledge about the data and how it was collected, stored, or maintained (Dkt 101 at 13). In general, "[t]o satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a). Here, where Plaintiff can establish a foundation showing that the evidence satisfies the requirements of Rule 803(6), the Rule 901 authentication requirements are also met, and no additional foundation is necessary to admit the evidence. See 5 Weinstein's Federal Evidence § 900.07 [1][b] [i ] (2012). Hence, for the reasons previously stated in rejecting Defendants' hearsay argument, Defendants' authentication argument similarly fails.

Van Sweden Jewelers, Inc., 1:10-CV-253, 2012 WL 4074620 (W.D. Mich. June 21, 2012).

The Court find the analysis persuasive and concludes that the evidence is admissible. The Court's ruling does not settle the parties' dispute inasmuch as Defendant's expert, David Canfield, concluded that the number of successful transmissions cannot be determined given the fax logs and lists contained on the hard drive. (Doc. No. 86, Ex. G).

According to Canfield, there are no "trace logs" on the hard drive for each of the 7,022 transmissions relating to SamMichaels. (Id., at ¶ 8). As Plaintiff's own expert

14

explained, "a trace log is the only log that can dispositively show that a fax transmission was, or was not, a **successfully completed** fax transmission." (Id.) Canfield observes that a one-page black and white fax should successfully transmit between 45 and 65 seconds, and that any transmission outside this range has an ever increasing chance of failure due to a large number of causes. (Id. at ¶ 20). According to Canfield, the absence of trace logs on the hard drive undermines Plaintiff's burden to show the fax transmissions were successfully completed. Moreover, Canfield identifies several scenarios that could result in an unsuccessful transmission. Caselaw requires the transmission be sent successfully. See e.g. Hinman v. M and M Rental Center, Inc., 596 F.Supp.2d 1152, 1159 (N.D. Ill. Jan. 27, 2009) ("On its face, the statute prohibit[s] the sending of unsolicited fax advertisements and make[s] no reference at all to receipt, much less to printing.").

The credibility of the experts and the weight to be give the opinion of each is not for the Court on summary judgment. To the extent that there is an issue about the accuracy of the fax logs themselves, that goes to the weight of the evidence, an issue appropriately addressed at trial. CE Design Ltd. v. CY's Crabhouse N., Inc., 07 C 5456, 2010 WL 3327876 (N.D. Ill. Aug. 23, 2010). Accordingly, the Court denies summary judgment on this issue, and finds it unnecessary to address Defendant's alternate argument that Plaintiff has not met its burden on summary judgment because the owners of each fax machine or fax line in 2006, when the transmissions occurred, have not been identified.

### D. TREBLE DAMAGES

Knowing or willful violations of the TCPA **may** entitle a plaintiff to treble damages. 47 U.S.C. § 227(b)(3)(C). Under the Communications Act, willful means "conscious and deliberate commission or omission. . .irrespective of any intent to violation." 47 U.S.C. § 312(f) (emphasis added). The statute does not require the imposition of treble damages;

15

such an award is discretionary. Because the facts of this case are disputed, any ruling on whether such an award is warranted is premature, and the Court denies Plaintiff's request for summary judgment on this issue.

### E. AVAILABILITY OF PREJUDGMENT INTEREST

Section 600.6013(1) provides for prejudgment interest on a money judgment recovered in a civil action from the date the complaint is filed to the date of judgment. Mich. Comp. Laws § 600.6013(1). Defendant maintains that should Plaintiff prevail, any injury suffered as a result of Defendant sending a fax on November 32, 2006, or November 22, 2006, would be compensated fully. Plaintiff did not respond to this argument.

The Court agrees with Defendant. The TCPA provides for statutory damages that exceed actual damages. See Kopff v. Roth, CIV.A.05 798 JDB, 2007 WL 1748918 (D.D.C. June 15, 2007) (declining the plaintiffs' request for prejudgment interest, noting that such an award was discretionary and that the purpose was to compensate the plaintiff for any delay in payment resulting from the litigation). Consequently, the Court finds prejudgment interest would not be warranted.

### IV. CONCLUSION

Accordingly, Plaintiff's Motion to Strike Paragraphs 4, 5 (sentence 2), 7, and 10 of the September 24, 2013 Affidavit of Maher Shihadeh is **DENIED**, Defendant's Motion to Strike a Portion of and an Exhibit to Plaintiff's Reply Brief is **GRANTED IN PART and DENIED IN PART**. Plaintiff's Motion for Summary Judgment is **DENIED**.

16

**IT IS SO ORDERED.**

s/Marianne O. Battani<br>
MARIANNE O. BATTANI<br>
UNITED STATES DISTRICT JUDGE

Dated: January 15, 2014

## CERTIFICATE OF SERVICE

Copies of this Order were served upon counsel of record on this date by ordinary mail and/or electronic filing.

s/Bernadette M. Thebolt<br>
Case Manager

17